## RE IRA BARNEY'S WILL.

May Term, 1899.

Present: TAFT, C. J., ROWELL, TYLER, MUNSON, START, THOMPSON and WATSON, JJ.

Opinion filed June 14, 1899.

*Opening Statement.*—It is error to permit counsel, in his opening statement to the jury, to refer to the result of a former trial as evidence that his opponents would not be able to substantiate their present claims.

*Bogus Signatures—Collateral Issues.*—Witnesses upon the stand, whose signatures as witnesses to the contested will are claimed to have been counterfeited, should not be shown bogus signatures of their own names and asked if they would consider them genuine. Such bogus signatures are inadmissible as raising a collateral issue, and the rule is not to be relaxed even in cross examination.

*Unnatural Will—Evidence.*—When it is claimed that a will is unnatural in failing to provide for needy relatives, it may be shown by way of explanation that the testator entertained unfriendly feelings towards the husband of one such heir and towards the son of another.

*Cross-Examination—Collateral Issues.*—The proponent, who was a lawyer, drew the will in question, by the terms of which he would receive the whole property after a life estate in the widow, and being upon the stand, was asked in cross-examination whether he did not understand when he drew the will that by the law of Rome such an instrument was void. *Held*, error to permit the question.

*Declarations as Evidence of Mental State.*—The proponent having claimed that the testator was at a certain period happy and contented, the contestants were properly allowed to show the testator's own declarations to the contrary.

*Exception to Charge.*—Exception was taken to the charge in that it stated that certain facts were suspicious and cast upon the proponent the burden of proof; but as the charge is not before this court, it is inferred that the jury were elsewhere instructed, that the facts were subject to explanation and that it was for the jury to say whether and how far a given fact was suspicious.

*What Papers May Go to the Jury.*—Although what papers shall go to the jury is largely matter of discretion, inadmissible papers are never to be submitted.

APPEAL from a decree of probate court allowing an instrument as the last will of Ira Barney. Pleas, defective execution, incapacity, undue influence and fraud. Trial by jury at the September term, 1898, Chittenden county, *Ross*, C. J., presiding. Verdict and judgment for the contestants. The proponent excepted.

The proponent, Charles T. Barney, is a grand nephew of the testator, is a lawyer, and himself drew the will. The contestants are all the lawful heirs of the deceased except the proponent's father. The will bequeaths all the testator's property to the proponent after a life estate in the testator's widow. The widow, the proponent and the proponent's father are named as executors. The case had been tried once before, resulting in a verdict in favor of the will and the judgment had been reversed in the supreme court upon the contestants' exceptions, and a new trial ordered. 70 Vt. 352. At the beginning of the present trial, counsel for

the proponent made an opening statement to the jury of such facts as his testimony would tend to establish, in reply to which counsel for the contestants remarked that unless the proponent succeeded better in his proof than he did on the former trial, he would not be able to substantiate the facts stated. To this remark the proponent seasonably excepted.

The contestants, under exception, were permitted to ask the proponent in cross-examination whether he did not know at the time he was called upon to draw the will that by the Roman law such a will would be void as to the drawer of it, and replied that he did.

*Seneca Haselton*, *D. J. Foster* and *Charles T. Barney* for the proponent.

The remark of counsel in his opening statement was exceedingly prejudicial, and the more so for being contrary to fact; the former verdict was in favor of the will. Such remarks are ground for reversal. *Goldthorpe* v. *Goldthorpe*, 77 N. W. 471; *Noble* v. *Portsmouth*, 30 Atl. 419; *Conn* v. *State*, 11 Tex. App. 399; *Perkins* v. *Burley*, 64 N. H. 524: 15 Atl. 21; *Evans* v. *Trenton*, 112 Mo. 390; *State* v. *Clouser*, 72 Iowa 302: 33 N. W. 686; *Estes* v. *Bridgforth*, 114 Ala. 221: 21 So. 512; *Purdy* v. *Hall*, 134 Ill. 298: 25 N. E. 645; *State* v. *Cater*, 100 Iowa 501: 69 N. W. 880, 884; *Jones* v. *State*, 89 Ind. 82; *Robertson* v. *Madison*, 29 Atl. 777; *Bullard* v. *R. Company*, 64 N. H. 27: 5 Atl. 838; *Scripps* v. *Reilly*, 35 Mich. 371: 24 Am. Rep. 575; *Brown* v. *Swineford*, 44 Wis. 282: 28 Am. Rep. 582; *Cleveland Paper Co.* v. *Banks*, 15 Neb. 20: 48 Am. Rep. 334; *Gibson* v. *Zeibig*, 24 Mo. App. 72; *State* v. *Fitzgerald*, 68 Vt. 125; *Cutler* v. *Skeels*, 69 Vt. 154; *Ranchau* v. *R. Co.*, 71 Vt. 142.

The inquiry as to the civil law was inadmissible. *Merrill* v. *Noyes*, 10 Allen 416; *State* v. *Smith*, 6 R. I. 33; *Harris* v. *State*, 24 Neb. 803; *Newkirk* v. *State*, 27 Ind. 1; *State* v. *Hannett*, 54 Vt. 83, 89.

The bogus signatures were inadmissible. *Rowell* v. *Fuller*, 59 Vt. 688; *Spottiswood* v. *Weir*, 66 Cal. 525; *Com.* v. *Eastman*, 1 Cush. 189; *Com.* v. *Jeffries*, 7 Allen 562; *Cohen* v. *Teller*, 93 Pa. 123; *Thomas* v. *State*, 18 Tex. App. 213; *McKeone* v. *Barnes*, 108 Mass. 344; *Thayer* v. *Chesley*, 55 Me. 393; *Doud* v. *Reid*, 53 Mo. App. 553; Chase's Stephen's Evidence, 155 note (ed. '98); *Gaunt* v. *Harkness*, 53 Kan. 405; *Rose* v. *Bank*, 91 Mo. 399: 3 S. W. 876; *Andrews* v. *Hayden*, 11 S. W. 428: 88 Ky. 455; *Tyler* v. *Todd*, 36 Conn. 218; *Massey* v. *Bank*, 104 Ill. 327; Rogers Exp. Tes. 204.

Evidence should have been admitted to show the testator's feelings towards the husband and son of excluded heirs. In *Re Hine*, 37 Atl. 384 (Ct.); *Re Cahill's Estate*, 36 Atl. 563: 180 Pa. St. 131; *Whitman* v. *Morey*, 2 Atl. 899: 63 N. H. 448; *Estes* v. *Bridgforth*, 21 So. 512: 114 Ala. 221.

*W. H. Bliss*, *F. B. Deberville* and *R. E. Brown* for the contestants.

Exception 1 is frivolous. There was nothing improper in the remark cited, taken in connection with the opening statement of counsel for proponent. The charge as to burden of proof was bound to be the reverse of what it was in the former trial, and evidence then sufficient would not be sufficient now. *Re Barney's Will*, 70 Vt. 352, 371. There was no ruling of the court on the question of the propriety of the remark. Exceptions of this kind are frequent of late and in most cases are untenable. *State* v. *Warner*, 69 Vt. 30; *Bagley* v. *Mason*, *Ibid*, 175; *McMullin* v. *Erwin*, *Ibid*, 338; *Guiltinan* v. *Insurance Co.*, *Ibid*, 469; *Amsden* v. *Atwood*, *Ibid*, 527; *Re McCabe*, 70 Vt. 155; *State* v. *Marsh*, *Ibid*, 288; *Billings* v. *Insurance Co.*, *Ibid*, 477.

These exceptions have arisen in nine cases in the last two volumes of Vermont Reports and have been sustained in only one, *Cutler* v. *Skeels*, 69 Vt. 154, when the counsel

stated and iterated pertinent facts of which there was no evidence.

It was proper to inquire, on cross-examination, of the proponent, to learn whether he realized how dangerous it was for him to draw this will in his own favor, as bearing upon the question whether he did not have to draw it himself in order to have it in his own favor. Whatever may be said of the quality of his answer as a lawyer, it could not have prejudiced his rights before the jury. But if it had it was legitimate cross-examination of a party. 1 Greenl. on Evidence, §§ 446–450.

The ruling was at least within the discretion of the court. See cases cited in note 2, p. 320, Stephen's Digest of Ev., 2d Am. Ed. Also, pp. 321-2-3-4.

TAFT, C. J. (1) The remark of the contestants' counsel in his opening statement to the jury was improper. It was not in line with what an opening statement should be, viz: —a statement of the issues in the case, and the facts proposed to be shown, to enable the jury to better understand the testimony as it is given. A lengthy statement is never necessary and an argumentative one improper. A discussion of whether the adverse party will or will not be able to substantiate the facts as claimed by him is not a legitimate opening statement. It is a fact which can only be determined by the result of the trial, and the opinion of counsel in respect to it, is illegitimate. It cannot be said in this case that the remark was harmless for the trial began with the statement of counsel that upon a former trial of the case the verdict or result of the trial was against the will. We cannot say that it had no effect upon the minds of the jurors. It may have prejudiced them against the will.

(2) The contestants claimed that the signatures on the alleged will, from the translucency of the paper, might have been transferred thereto by tracing; and bogus signatures of two of the witnesses whose names appear on the instrument as attesting witnesses, and of the alleged

testator, were admitted in evidence; and the two witnesses were permitted to testify that if shown the bogus signatures and not told they were counterfeit, they might have thought they were genuine. This testimony was taken under objection and exception. The bogus signatures presented a collateral issue, and should not have been admitted, nor the witnesses questioned in respect to them. That the rule is not to be relaxed in favor of a cross-examination is equally clear and has been many times held by courts of last resort in England and the United States.

(3) The contestants claimed the will was an unnatural one and gave evidence tending to show the impoverished condition of some of the testator's heirs, and the friendly relations existing between him and some of them, as well as the financial circumstances of the proponent's mother who was not an heir of the testator. The testator had two nieces who were of his heirs and had he died intestate, each would have inherited one-sixteenth of his estate. Testimony tending to show unfriendly feelings towards the husband of one niece and a son of another was excluded. It might have been natural and reasonable for the testator to exclude an heir whose husband he disliked or to whose son he was hostile. It is difficult generally to divorce from one's mind the fact that the prosperity of one's wife or mother redounds in a pecuniary way to the benefit of the husband or son. Pecuniary injury resulting to persons standing in such relations is recognized by our statutes in actions for the death of a person caused by a wrongful act. It was error to reject the testimony.

(4) The proponent's knowledge of the Roman law at the time he drew the will was not an issue in the case, neither was it any part of his legitimate cross-examination. The testimony served to bring before the minds of the jury the fact that by the law of Rome, the will was void. If this was legitimate, his knowledge or ignorance of what the law of any other country was, would likewise be permitted and

so a multitude of immaterial collateral issues would be raised having no relevancy upon any of the questions before the jury. The admission of the testimony was error.

(5) A question is made as to the testimony of one Ward. The custom of the bank was inadmissible unless it was a general custom observed by all. The witness claimed he was not an expert, but contestants' counsel made him one, and obtained his testimony, and then objected to his cross-examination because he said he was not an expert, and the court, after permitting the examination in chief, excluded the cross-examination upon the ground that the subject was not one of expert testimony, and that the jury could judge of the matter as well as the witness. It is unnecessary however, to pass upon this question as the judgment must be reversed upon other grounds and the question will probably not again arise.

(6) The proponent put in testimony that during the summer of 1895, the year prior to his death, Ira Barney who then lived at Truman Barney's was well and jolly, very happy and contented, and that his mind seemed to be at peace. It was not error to permit contestants to prove his declarations tending to show the contrary. There was no better way of showing whether Ira was contented or discontented than by his declarations.

(7) This exception is waived.

(8) The proponent excepted to that part of the charge in which the trial judge stated the circumstances which cast upon the proponent the burden of proving by satisfactory evidence that the alleged will was the free and intelligent act of Ira Barney and that he fully understood its contents and effect. The charge of the court is not before us. The criticism upon that part of the charge above noted is that the jury were told that the facts above referred too were circumstances of suspicion which cast upon the proponent the burden, etc. We infer that the judge in the other parts of the charge properly instructed the jury that the circum-

stances were subject to explanation and whether any given fact was suspicious, or to what extent suspicious, was for the jury to say upon a consideration of the whole testimony in the case. In some cases any certain fact might have great weight against the validity of the will when in other cases it might have little or none at all.

(9) What papers should go to the jury is ordinarily and perhaps in all instances a matter of discretion in the trial judge, but inadmissible papers should never be sent to the jury. In permitting the bogus signatures to go, there was error.

*Judgment reversed and cause remanded.*