## Surface, Appellant, *v.* Bentz.

*Practice, C. P.—Trial—Witnesses—Improper remarks—Withdrawal of juror.*

1. When any irrelevant or improper matter tending to prejudice or mislead the jurors is placed before them by a witness, and especially a witness who is also a party, the court should act promptly and protect the party whose cause is exposed to the improper influence by withdrawing a juror. It is quite as necessary to protect a party against improper remarks to a jury made by a witness as it is against such remarks when uttered by counsel.

*Wills—Mental condition—Evidence—Condition prior and subsequent to execution of will—Issue devisavit vel non.*

2. In an issue devisavit vel non, it is proper for the court to instruct the jury that it may consider the condition of the testator's mind immediately prior and subsequent to the execution of the will, in order to determine his mental condition at the time he executed the instrument.

*Attorney at law—Attorney and client—Privileged communication—Evidence.*

3. The privilege of confidential communications extends to communications made to an attorney in good faith with a view to employing him in the matter to which the communications relate, or during the course of negotiations for his employment, even although the attorney declines the case, or the prospective client after hearing the attorney's advice does not further employ him.

Argued April 26, 1910. Appeal, No. 370, Jan. T., 1909, by plaintiff, from judgment of C. P. Cumberland Co., Nov. T., 1909, No. 50, on verdict for defendants in case of H. A. Surface v. John M. Bentz, A. W. Bentz et al., heirs of William Bentz. Before Fell, C. J., Mestrezat, Elkin, Stewart and Moschzisker, JJ. Reversed.

Issue devisavit vel non.  Before SADLER, P. J.

The facts appear in the opinion of the Supreme Court.

Plaintiff requested the court to charge, inter alia, as follows:

6. If at the time of making the alleged will or republishing the same, the testator was sound in mind and knew the business in which he was engaged, then it is immaterial whether he was mentally unsound or delirious or unconscious before or after the time of the making of said will.  *Answer:* We cannot instruct you, under all the evidence, that it is immaterial in this controversy whether William Bentz was mentally unsound or delirious or unconscious before or after the making of the will in controversy; the crucial question is, what was his condition and what occurred on March 3, 1910, when the will was executed by William Bentz.  That is what you must consider.

Verdict and judgment for defendants.

*Errors assigned* among others were refusal to withdraw juror, and (3) in refusing plaintiff's sixth point, as above.

*E. M. Biddle, Jr.,* with him *F. B. Sellers, Jr.,* and *Ida G. Kast,* for appellant.—Where remarks are made which tend to prejudice the minds of jurors, it is the plain duty of the court to withdraw a juror and continue the case, and it does not matter whether the improper influences are brought upon the minds of the jury by the admission of testimony, statements of counsel, offers of proof, or by questions asked witnesses and jurors: Holden v. Penna. R. R. Co., 169 Pa. 1; Wagner v. Hazle Twp., 215 Pa. 219; Fisher v. Penna. Co., 34 Pa. Superior Ct. 500; Walsh v. Wilkes-Barre, 215 Pa. 226; Saxton v. Rys. Co., 219 Pa. 492; Hollis v. U. S. Glass Co., 220 Pa. 49; Hale v. Hale, 32 Pa. Superior Ct. 37.

The crucial question is the condition of testator's mind at the date of the will: Kane's Est., 206 Pa. 204; Miles v. Treanor, 194 Pa. 430; Walton's Est., 194 Pa. 528; Alli-

son's Est., 210 Pa. 22; Butler's Est., 223 Pa. 252; Penny-packer v. Pennypacker, 5 Sadler, 408; Thompson v. Kyner, 65 Pa. 368.

The communications of Surface to Lloyd were privi-leged: Moore v. Bray, 10 Pa. 519; Beeson v. Beeson, 9 Pa. 279; Bacon v. Frisbie, 80 N. Y. 394; Cross v. Riggins, 50 Mo. 335; Alderman v. People, 4 Mich. 414; Carroll v. Sprague, 59 Cal. 655; Sargent v. Hampden, 38 Me. 581; Thorp v. Goewey, 85 Ill. 611; Skellie v. James, 81 Ga. 419 (8 S. E. Repr. 607); Peek v. Boone, 90 Ga. 767 (17 S. E. Repr. 66); Nelson v. Becker, 32 Neb. 99 (48 N. W. Repr. 962).

*S. B. Sadler*, with him *J. L. Shelley*, for appellees.— If there be any evidence from which capacity may be fairly inferred, it is a question for the jury: Pidcock v. Potter, 68 Pa. 342; Yardley v. Cuthbertson, 108 Pa. 395; McCormick v. McCormick, 194 Pa. 107; Newhard v. Yundt, 132 Pa. 324; Bitner v. Bitner, 65 Pa. 347.

Condition of testator prior and subsequent to execu-tion of will is proper for the consideration of the jury: Pennypacker v. Pennypacker, 5 Sadler, 408; Reichen-bach v. Ruddach, 127 Pa. 564.

Where no harm is done the court is justified in refusing to withdraw a juror: Com. v. McMahon, 14 Pa. Superior Ct. 621; Com. v. Striepeke, 32 Pa. Superior Ct. 82; Thompson v. Stevens, 71 Pa. 161; Com. v. Greason, 204 Pa. 64; Moore v. Neubert, 21 Pa. Superior Ct. 144; Dougherty v. Rys. Co., 213 Pa. 346.

OPINION BY MR. JUSTICE MESTREZAT, July 1, 1910:

This was an issue devisavit vel non to determine whether William Bentz was at the time of the execution of a paper purporting to be his last will, of sound and disposing mind, and whether he was induced to make said paper by undue influence. The trial of the cause resulted in a finding in favor of the plaintiff on the sec-ond, and in favor of the defendants on the first, of the

two issues, and this appeal was taken by the plaintiff who alleges numerous errors committed by the court below on the trial of the cause.

Several of the assignments allege error in the court's refusal to withdraw a juror on motion of plaintiff's counsel on account of improper remarks made by witnesses while testifying, two of whom were defendants, and all of whom displayed more or less feeling while on the witness stand. In several recent cases we have reversed the trial court because it refused to withdraw a juror and continue the cause on the ground of improper remarks made by counsel which tended to inflame the passions or prejudices of the jurors or lead them to a verdict not based on the evidence adduced on the trial. We have held that such remarks tended to mislead the jury and to procure a verdict unwarranted by the evidence. They introduce matter into the trial of the cause which is irrelevant, improper and has a tendency to defeat the ends of justice. It, therefore, is manifestly the duty of the court to protect the injured party by withdrawing a juror and sending the case to another jury which is free from any erroneous impressions caused by such improper conduct.

It is equally true that for any irrelevant or improper matter tending to prejudice or mislead the jurors and placed before them by a witness, especially by a witness who is also a party, the court should act promptly and protect the party whose cause is exposed to the improper influence upon the minds of the jury. It is quite as necessary to protect a party against the improper remarks to a jury made by a witness as it is against such remarks when uttered by counsel. In either case, it is inexcusable, and the only protection the injured party has must come from the court, and it should act promptly in the matter. In this case, a motion to withdraw a juror was made at five different times during the progress of the trial on the ground of improper remarks made by witnesses. Samuel Bentz was a defendant as well as a

witness for himself in the cause. While being interrogated by his counsel and after having fully replied to a question, he proceeded to volunteer some hearsay testimony and was interrupted by plaintiff's counsel. Whereupon, his own counsel said: "Just what you saw yourself?" He then replied addressing the jury: "You know in law we can't say just exactly what we would like to say, but you gentlemen understand it all." The plaintiff's counsel promptly moved the court to withdraw a juror and continue the case. This was refused, the learned court saying: "I don't think anything the witness has said has injured the rights of the plaintiffs, but we will direct them to disregard anything you complain of." Immediately before the objectionable remark, the witness had testified to the condition of the testator, his brother, and that he had told the two nurses that his brother was not in a fit condition to receive them. On another occasion after further testifying to his brother's condition and to a conversation with the plaintiff, the same witness said: "He (plaintiff) told me that barefaced lie." The plaintiff's counsel moved to withdraw a juror, when the witness resumed and attempted to tell something the plaintiff had told him. The plaintiff's counsel then asked the court to rule on his motion which the court did by overruling it and telling the jury to disregard the statement of the witness. John M. Bentz, another defendant and a witness for himself, was asked his opinion whether the testator was competent to make a will and he replied emphatically: "No. Why I believe I could have gotten him to sign any document ————." Here, the plaintiff's counsel interposed an objection and the witness was prevented from proceeding. The court again refused a motion to withdraw a juror, and in directing the jury to disregard the objectionable language used by the witness, repeated it to the jury. Mr. Martin, a witness for the defendant, was asked his opinion whether the testator was competent to intelligently transact business, to which he replied: "No," whereupon the

counsel for the defendant asked him whether he was competent at any time during the period stated in the testimony, to which the witness replied: "No; and well do they know it." The court refused a motion to withdraw a juror, again repeating the objectionable remark in telling the jury to disregard it. George E. Lloyd, an attorney and insurance agent, was a witness for the defendant and replied argumentatively to a question put by the defendant's counsel. Plaintiff's counsel asked the court to withdraw a juror, which was declined with a remark by the court imputing to counsel the cause of the witness's answer. While the witness Lloyd was on the stand, and after giving an uncertain answer to a question by plaintiff's counsel, he, in his apparent anxiety to get something before the jury, said: "Do you want me to state the reason?" The court at once said: "Certainly, state it." The witness began: "I tell ———," when the plaintiff's counsel promptly interrupted him and asked for an exception to the court's conduct which was granted.

We think the motion of the plaintiff's counsel should have been allowed and a juror withdrawn. The witnesses of the defendants, above referred to, those who were parties as well as those who were not parties, manifested much feeling and bias, and in reading the testimony it is apparent that they interjected the objectionable remarks for the purpose of influencing the jury. If such remarks had been made by counsel, our cases show that we would have reversed the court for not withdrawing a juror and continuing the case. The remarks of the witnesses had, perhaps, greater effect with the jury than had they been uttered by counsel. In trials of this character, such remarks by witnesses are not only highly improper, but naturally have a tendency to mislead the jury. The opponents of the will alleged that the testator lacked testamentary capacity, and also that undue influence had been brought to bear upon him to make a will which would be favorable to the plaintiff. They claim that the testator was deprived of testamentary ca-

pacity by reason of the excessive use of intoxicants for many years, and that his condition was such that he became a prey to the influence of the plaintiff. The court's rulings were not such as to eliminate from the minds of the jurors the objectionable remarks of the witnesses. In some instances the court repeated the improper remarks, and in one instance, incorrectly suggested, as the record discloses, that the plaintiff's counsel was responsible for the witness's reply. The court's rulings aggravated rather than lessened the effect of the incompetent testimony, on the minds of the jurors. We must sustain the assignments which allege error in the refusal of the court to withdraw a juror.

The third assignment is not sustained. We think the answer was correct. The learned judge did not intend to say that the crucial question was not the condition of the testator's mind at the date of the will, as claimed by the counsel for the appellant, but we think did say in effect that in determining that question the jury might take into consideration the condition of the testator's mind immediately prior and subsequent to the time of the execution of the will. The evidence of the condition of the testator's mind at those periods tended to show the condition of his mind when he executed the instrument. It was, therefore, competent for the jury to consider such evidence as bearing upon the question of the testator's mental capacity at the time the will was executed. We need not rule on the admissibility of the hypothetical question in view of the fact that the case goes back for another trial. The existence of the facts embodied in the question may then be determined upon the evidence before the court.

We have alluded to Mr. Lloyd's testimony. The facts are not sufficiently disclosed to enable us to determine the character of the communications between Mr. Lloyd and the plaintiff, and hence we will not sustain the fourteenth assignment of error. If the testimony is offered on the next trial, the facts should be fully developed,

when, in the light of the numerous authorities, its admissibility can be determined without difficulty. The question is discussed and ruled in many cases in our own and in other jurisdictions as appears by the decisions cited in the paper-books. In 23 Am. & Eng. Ency. of Law, 63, it is said that the privilege of confidential communications extends "to communications made to an attorney in good faith with a view to employing him in the matter to which the communications relate or during the course of negotiations for his employment, even although the attorney declines the case, or the prospective client after hearing the attorney's advice, does not further employ him." Mr. Wigmore (Evidence, vol. 4, sec. 2304) says: "Since the would-be client cannot certainly predict the attorney's acceptance of the employment, the former must be protected in his preliminary statements when making the overtures, even if the overture is refused." The payment of a fee is not necessary to establish the relation of attorney and client: Beeson v. Beeson, 9 Pa. 279, and we have said that "the circle of protection is not so narrow as to exclude communications a professional person may deem unimportant to the controversy, or the briefest and lightest talk the client may choose to indulge with his legal adviser, provided he regards him as such, at the moment:" Moore v. Bray, 10 Pa. 519, 524.

The judgment is reversed and a new venire awarded.