IN THE

# SUPREME COURT

OF THE

## STATE OF IDAHO.

(October 4, 1923.)

EARL S. BARTON, Respondent, v. A. N. DYER and A. S. HARDY, Executors of the Last Will and Testament and Estate of WALLACE SCOTT, Deceased, Appellants.

[220 Pac. 488.]

PERSONAL SERVICES—PLEADING—ADMINISTRATOR—DISQUALIFICATION AS WITNESS UNDER C. S., SEC. 7936—ALLEGED ERROR IN TESTIMONY— RIGHT OF WITNESS TO CORRECT—EXHIBITS—INSPECTION—CROSS-EXAMINATION TO TEST KNOWLEDGE AND MEMORY OF WITNESS— ISSUES INVOLVED IN SUIT—BEST EVIDENCE.

1. In an action for the reasonable value of personal services the complaint should state the general character of such services.

2. A party has no absolute right, after trial and judgment, to correct the transcript of a witness' testimony according to the statement of such witness as to what he testified to on the trial.

3. It is discretionary with the trial court whether or not it will permit exhibits to be passed to the jury for inspection during the examination of a witness.

4. It is not error for a trial court to permit reasonable cross-examination of a witness upon matters not bearing directly upon the issues being tried for the purpose of testing the knowledge and recollection of such witness as to facts about which he has testified on his direct examination.

5. The best evidence of what were the issues involved in a suit is the complaint and answer filed in such suit.

APPEAL from the District Court of the Tenth Judicial District, for Idaho County. Hon. Wallace N. Scales, Judge.

Action for services rendered. Judgment for plaintiff. *Affirmed.*

38 Idaho.—1       (1)

James F. Ailshie, for Appellants.

A complaint on *quantum meruit* for services which neither states the business nor profession of plaintiff, nor the kind of service rendered, or what it was for, is not sufficient. (C. S., sec. 6687; *Phoenix Lumber Co., v. Regents,* 197 Fed. 425; *Reid v. Steele,* 7 Ida. 571, 64 Pac. 892; *Shaw v. Manville,* 4 Ida. 369, 39 Pac. 559; *Pike v. Zadig,* 171 Cal. 273, 152 Pac. 923.)

It is error to call an executor on cross-examination and under that guise to go into the whole case of plaintiff who is prosecuting a claim against the estate represented by the executor. (C. S., sec. 7936, subd. 3; C. S., sec. 8935; *Darry v. Cox,* 28 Ida. 519, 155 Pac. 660; *Boeck v. Boeck,* 29 Ida. 639, 161 Pac. 576.)

An executor is not competent to testify for the plaintiff who is prosecuting a claim against the estate of a decedent where such testimony relates to statements and conversations had by the plaintiff, some without and some within the hearing of the decedent in his lifetime. (C. S., sec. 7936, subd. 3.)

"Public policy requires that claims against the estate of dead men should be established by very satisfactory evidence and the courts should see to it that such estates are fairly protected against unfounded and rapacious raids." (*Van Slooten v. Wheeler,* 140 N. Y. 281, 35 N. E. 587; 24 C. J. 865, sec. 2183.)

Frank L. Moore, for Respondent.

The amended complaint is sufficient. (C. S., secs. 6687, 6707, 6728; *Later v. Haywood,* 12 Ida. 78, 85 Pac. 494; *Nobach v. Scott,* 20 Ida. 558, 119 Pac. 295; *Shaw v. Manville,* 4 Ida. 369, 39 Pac. 559; Sutherland's Code Pleading, par. 5155; Pomeroy's Code Remedies, 3d ed., 621, secs. 548, 549, and cases cited.)

If defendants desired information as to the class, kind or character of services rendered deceased by plaintiff, they should have moved to make the complaint more specific, or

should have demanded a bill of particulars. (C. S., secs. 6709, 7582; Pomeroy's Code Remedies, 3d ed., 621, secs. 548, 549, and cases cited; *Busta v. Wardell*, 3 S. D. 141, 52 N. W. 418.)

The defendant Dyer was a competent witness for the plaintiff. (*Todd v. Martin*, 4 Cal. Unrep. 805, 37 Pac. 872; C. S., sec. 8035; *Young v. Montgomery*, 161 Ind. 68, 67 N. E. 684; *Hiatt v. McColley*, 171 Ind. 91, 85 N. E. 772; *Chase v. Evoy*, 51 Cal. 618; *Kinley v. Largent*, 187 Cal. 71, 200 Pac. 937.)

DUNN, J.—This action was brought by respondent against appellants as executors of the last will and testament of Wallace Scott, deceased, to recover $36,000 for services claimed to have been rendered by respondent in the settlement of a certain lawsuit that was pending in the federal court at Moscow, Idaho, in which Warren F. Scott was plaintiff and Wallace Scott was defendant. The cause of action was stated, first, on an express contract, and second, on a *quantum meruit*.

The case was tried before a jury, which returned a verdict of $6,000 for respondent, for which judgment was entered. Appellants moved for a new trial, which was denied. An appeal was taken from both the judgment and the order denying a new trial.

Appellants assign fifty-two errors. It will not be necessary to discuss these in detail, but those that are discussed will be dealt with, as far as possible, in groups as set out in appellants' brief.

Appellants complain of the action of the court in overruling their special demurrer to the second cause of action on the ground that it did not state the "nature, character, extent, manner or amount of services performed, or state any fact from which defendants can ascertain or determine the reasonableness of said pretended services."

That portion of the second cause of action referred to reads as follows:

"That heretofore on or about February, 1918, the above named Wallace Scott, then living, became indebted to plaintiff in the sum of thirty-six thousand dollars ($36,000.00) for services performed by plaintiff for, at the special instance and request of, him, the said Wallace Scott."

We think it would have been better pleading if in this cause of action the general character of the services rendered had been set out as was done in the first cause of action; but the error overruling the demurrer was without prejudice to appellants, for this cause of action, as well as the first, is based upon a claim for said services presented to appellants as executors and rejected by them, which claim designates the character of the services for which payment is demanded. Besides this, the answer sets up a further and separate defense, which shows very clearly that appellants are not prejudiced by the error complained of.

Appellants assign as error the refusal of the court to correct the transcript in the testimony of the witness Dyer by making his answer to a certain question "No, sir," instead of "Yes, sir." The motion to make this correction is supported by the affidavit of Dyer, stating that he did not intend to answer said question "Yes, sir," and that "No, sir" is the true answer. Appellants appealed from the order of the district judge denying motion to make this correction.

We do not understand that a trial judge is compelled to accept a witness' statement after the trial is over as to what he intended to say, and correct the record accordingly. It frequently happens during the progress of a trial that a witness finds he has been mistaken in his testimony and asks permission to correct it, and it is proper that this should be done at any time during the trial when the witness says in open court that the testimony given by him is incorrect and asks leave to make a correct statement, for under such circumstances the other side may question him as to the correction he seeks to make; but the case is different when an application is made to change his testimony long after the trial is over. In settling a transcript, the trial judge must rely upon the reporter's notes and upon his own recol-

lection of the testimony, unless the parties themselves agree that certain corrections shall be made. In this case we have a transcript before us, certified first by the reporter as correct and settled by the trial judge as true and correct, after opportunity given to both parties to call the court's attention to errors therein, if there were any. There was no error in refusing to make the correction requested by appellants.

Appellants complain of the action of the trial court in refusing to allow them to submit to the jury for their inspection at that time an exhibit about which witness Moore was being examined. Appellants say: ''We had a right to have them see the evidence at the time that we were calling specific attention to it, and while the witness was giving his version of the signatures to it.'' We do not understand that counsel, in the examination of a witness, has the absolute right to pass all of his exhibits over to the jury and have them inspected at that moment. This certainly is a matter about which the trial court has some discretion. It would seriously interrupt the progress of a trial in many instances if counsel were accorded the right claimed in this case. There was no error in the action of the trial court.

At the beginning of the trial, respondent called appellant Dyer for examination under C. S., sec. 8035, which reads as follows:

''A party to the record of any civil action or proceedings, or person for whose immediate benefit such action or proceedings is prosecuted or defended, or the directors, officers, superintendent or managing agents of any corporation which is a party to such record, may be examined by the adverse party as if under cross-examination, subject to the rules applicable to the examination of other witnesses; and the testimony given by such witnesses may be rebutted by the party calling him for such examination by other evidence. Such witness when so called may be examined by his own counsel, but only as to matters testified to on such examination.

"Nothing contained in this section shall be construed in such manner as to compel the husband or wife to testify against the other, nor to compel a witness to disclose information or communications which are privileged by the law."

It is the contention of appellants that Dyer was disqualified by that portion of C. S., sec. 7936, which reads as follows:

"The following persons cannot be witnesses: . . . .

"3. Parties or assignors of parties to an action or proceeding, or persons in whose behalf an action or proceeding is prosecuted against an executor or administrator, upon a claim or demand against the estate of a deceased person, as to any matter of fact occurring before the death of such deceased person."

And also that the examination was contrary to the spirit and the letter of C. S., sec. 8035, for the reason that the action was not defended for the immediate benefit of Dyer; that he had no personal interest in its outcome, and that he was "only officially a party to the record." As to the first objection under C. S., sec. 7936, we think Dyer was not disqualified as a witness. As we understand subdivision 3 of this section, its intention is to prevent parties, or assignors of parties, from testifying in support of their claims against an executor or administrator, but not to prevent an executor or administrator from being called as a witness in support of such claim, nor to prevent such party plaintiff from being called by the executor or administrator in opposition to his claim. This construction is supported by the decisions of the supreme court of California, which has a statute identical with ours in this respect. (*Todd v. Martin,* 4 Cal. Unrep. 805, 37 Pac. 872; *Chase v. Evoy,* 51 Cal. 618; *Kinley v. Largent,* 187 Cal. 71, 200 Pac. 937.)

We think appellants' position as to the second objection is equally untenable. Dyer was a party to the action, whether "officially" or otherwise makes no difference. Being a party, he was clearly one who could be called for examination by the adverse party under C. S., sec. 8035.

At the close of the examination of witness Dyer by respondent under C. S., sec. 8035, appellants claimed the right to cross-examine the witness and respondent's objection thereto was overruled. This was error. When this statute says that "such witness when so called may be examined by his own counsel, but only as to matters testified to on such examination," it means that the examination by his own counsel shall be according to the rules governing direct examination. It does not give a party the right to cross-examine his own witnesses.

A special defense pleaded in this case was that while respondent claimed to be serving Wallace Scott in the settlement of the case pending in the federal court, he was in fact in the employ of Warren Scott, the plaintiff in said action, and of his counsel, and that immediately after the settlement of that case W. H. Casady, one of counsel for the plaintiff therein, paid the said Barton the sum of $200 for such services in the presence of Warren Scott. Warren Scott was called in this case by appellants and testified to seeing such payment made. On cross-examination counsel for respondent were permitted to cover a rather wide field for the purpose of testing Warren Scott's knowledge and recollection of what transpired at and about the time he claimed to have seen this payment made, but we do not think the court erred in this matter. Such examinations frequently cover matters that are not directly pertinent to the main issue being tried, but they are not for this reason immaterial, and they sometimes serve a very useful purpose in eliciting the truth and detecting falsehood.

It seems that after the settlement of the federal suit at Moscow, Wallace Scott and Warren Scott entered into another agreement or settlement, by which they set aside the Moscow agreement and appellants sought to introduce in evidence this last settlement. The court sustained respondent's objection thereto, which appellants claim was error. We think there can be no question as to the correctness of the court's ruling, as it appears to us this agreement would be inadmissible for any purpose.

Appellants contend that the admission of the bill of complaint and answer in the case pending in the federal court at Moscow was "one of the most palpable and disastrous errors committed in the case." We are unable to see how it would be possible to try such a case as this without showing to the jury what was involved in the suit that respondent claimed to have been instrumental in settling. If the issues must be shown, and an attempt had been made to show them otherwise than by the introduction of the pleadings, counsel for appellants would no doubt have objected, as he might properly have done, that the best evidence on that point would be afforded by the complaint and answer. They disclosed to the jury not only the amount sought to be recovered in that case, but the grounds upon which a recovery was claimed, and also showed the defense or defenses that Wallace Scott had set up against the claims of Warren Scott. Just what effect some of these things would have upon the minds of the jury in their estimate of the value of the services of respondent we cannot know; but that they were a proper part of the showing to be made to the jury as to the character of the controversy we have no doubt.

It is contended by appellants that since respondent was not a lawyer, the pleadings had no place in the case. It is admitted that respondent is not a lawyer; that he made no examination of the pleadings, and that he would not have understood them if he had examined them, but this does not alter the fact that the issues to be proved before the jury could properly be proved only by the introduction of the pleadings. The fact to be proved and the method of proof were not altered by the circumstance that respondent was a layman instead of a lawyer. There was no error in admitting the pleadings in evidence.

Appellants complain of the allowance of $6,000 made by the jury to respondent for the services which he claimed to have rendered Wallace Scott in the settlement of this suit. He had asked for $36,000, and his counsel testified that in his judgment respondent's services were reasonably worth

$25,000.   Appellants offered evidence tending to show that the services were not worth more than $100.   Appellants argue that because respondent was not a lawyer, nor a man of professional training in any direction, he could not have earned or properly been allowed any such compensation as the jury awarded for the services that he claims to have rendered.   Appellants in their brief say:

"Another question arises here and that is as to whether a workman or common laborer or a layman generally can perform services and then come in and recover for his services according to the wealth of the party for whom he worked and the extent and value of the property, structure, or concern on which he performed the labor.   If a plaintiff is going to recover more than his going wages or ordinary compensation, then certainly he must allege some reason for so doing and that reason must exist in his special qualifications, education and training for that particular kind of business, profession or avocation, and we maintain that he must then make his proofs as to the value of his services with reference to the particular kind of business, profession or avocation."

It would seem from the argument of appellants that they seek to show that only one having capacity to understand legal questions and the issues involved in the case in controversy could possibly earn more than ordinary wages in the settlement of a controversy such as is involved in this case.   True, there are legal questions involved in the case, but it is manifest from the record that Wallace Scott was planning to reach a settlement without consideration of strictly legal grounds, for he objected to having his own counsel represent him on that occasion.   The service for which respondent was selected by Wallace Scott was not one necessarily requiring legal knowledge.   By marriage respondent was related to Wallace Scott.   From what is shown in the record he no doubt was well acquainted with Warren, the adopted son of Wallace Scott, and it may be fairly inferred from all the circumstances shown that Wal-

lace Scott considered him fitted for the work assigned to him.

If a layman, in such a case as this, performs a service not strictly professional for which a professional man might properly receive several thousand dollars, we know of no reason why he should not receive an equal amount for the same service. It would not be fair to hold to a standard of day labor if a service of really great value was rendered by respondent under the conditions shown here. The value of such service as is involved in this case is not capable of exact mathematical determination. The best that can be done in such a case as this is to give the jury to understand, as clearly as possible, what were the issues involved and the character of the controversy settled, what the claimant did and the result, as nearly as can be ascertained, of his labors, and let them allow him what in their judgment is reasonable, basing such allowance upon the evidence before them. The jury were not bound either to accept the lawyer's estimate of $25,000 or that of appellants' witnesses of $100, if in their judgment an amount between these sums was reasonable. In our opinion there is sufficient evidence to sustain the judgment.

It is clear from the evidence that Wallace Scott, through his agent, A. N. Dyer, solicited respondent to go to Moscow for the purpose of aiding in settling the suit in the federal court there, that he did render services in connection with the settlement of that suit, and that Wallace Scott, after his return to Grangeville, expressed himself as satisfied with such services and asked respondent if he would be willing to take land for his compensation; that respondent replied that he would, and suggested that the deed be made to respondent's wife. It is in evidence, also, that A. N. Dyer, in obedience to instructions from Wallace Scott, made out certain deeds to be executed by Wallace Scott to the wife of respondent for 240 acres of land. These deeds were never executed by Mr. Scott. He also gave instructions to make out another deed to a tract of land in Latah county, but this was not made because he did not know the description

of the land. Proof of these facts was competent evidence of the employment of respondent, of the fact that he rendered services to Wallace Scott, and that Mr. Scott intended to compensate him therefor. It is true that it was shown that other deeds were made out by Dyer at the request of Wallace Scott to other parties who had no connection with the settlement of this suit, which were left unexecuted at the time of Wallace Scott's death. This fact was entitled to go to the jury, as it did, to be considered in connection with the evidence as to deeds made out to the wife of respondent.

Appellants complain that they were prejudiced by certain statements made in the argument of respondent's counsel to the jury, but we have examined the argument and are of the opinion that there is no just ground for appellants' complaint. Appellants appear to be of the opinion that the introduction of the pleadings in the federal case and the argument of respondent's counsel to the jury so inflamed the minds of the jury that they lost sight of the evidence and rendered a verdict, the amount of which was fixed by passion and prejudice. Without doubt there are features of the case that might tend to excite the passions and prejudices of jurors. But when we consider the amount claimed by Warren Scott in his suit against Wallace Scott, $325,000; his relationship to Wallace Scott; the fact that the settlement, in the making of which respondent participated, gave Warren Scott $30,000 in cash and $175,000 at the death of his father, Wallace Scott; the fact that the answer admitted that Wallace Scott had on two occasions made settlements with Warren Scott for his interest in his mother's estate for sums which, if his complaint even approximately stated the truth, were grossly inadequate; that respondent was asking $36,000 and that his attorney testified that the service rendered by respondent was reasonably worth $25,000, it would seem that the jury were not influenced by passion or prejudice, for if they had been so influenced they probably would have allowed a much larger sum.

To our minds the separate defense pleaded by appellants in this case, with the character of proof offered in support of it, might more easily have influenced the jury in the amount they allowed than the pleadings offered or the argument of counsel for respondent. As a separate defense, appellants charged that Barton, while in the employ of Wallace Scott for the purpose of settling the federal suit, was secretly working in the interest of Warren Scott; that he betrayed Wallace Scott for $200, which he received from Casady. Warren Scott testified to seeing Cassady pay Barton $200 for his services after the settlement was effected, and one J. L. Cook, who appears at the time of the settlement to have been in the employ of Wallace Scott, testified that after the settlement respondent told him that "Mr. Casady was taking care of him." All this was denied by Casady. Barton was forbidden by the law to testify as to this matter. The jury rejected this defense. If there was any influence of passion or prejudice, which we do not think appears, it was more likely caused by this attempt of appellants to show corrupt conduct on the part of Barton, which the jury found to be untrue.

There are other errors assigned, based upon the rulings of the court in admitting and rejecting testimony, and the giving and refusing to give certain instructions, but we think they are without merit and will therefore not discuss them.

The judgment of the district court, the order denying a new trial and the order denying the motion to correct witness Dyer's testimony are affirmed. Costs to respondent.

Budge, C. J., and Wm. E. Lee, J., concur.

McCarthy, J., dissents.