(No. 5768.　September 9, 1932.)

In the Matter of the Estate of WILLMA E. BROWN, Deceased. MARCUS S. FITE, Appellant, v. LEE L. FRENCH and EVELYN DENNY FRENCH, Respondents.

[15 Pac. (2d) 604.]

James F. Ailshie and John L. Phillips, for Appellant.

Cox, Martin & Ware, for Respondents.

GIVENS, J.—One Mike Brown married a widow with two daughters by a former husband, then minors, now Mrs. Evelyn Denny French, one of the respondents herein, and Mrs. Ruby Hudson. Mr. and Mrs. Brown had one child, the decedent herein concerned, who was crippled from birth, and always in delicate health.

Some four years after decedent's birth, Mr. and Mrs. Brown were divorced. Mrs. Brown remarried and had one other daughter, now Mrs. Mildred Flatebo.

Upon the death of Mr. Brown, who did not remarry, all his property passed to his daughter, the decedent, Willma E. Brown, who, thereafter, in September, 1927, made a will in favor of Dr. Marcus S. Fite, a chiropractor, appellant, a friend of her and her father's, who, after her father's death, interested himself in decedent personally and the management of her affairs. Thereafter, May 10, 1930, decedent, while living with a Mr. and Mrs. Burns, made a second will, revoking the former will, and leaving her

property to her half-sister, Mrs. French, one of the respondents, the other respondent being her (Mrs. French's) husband.

Willma E. Brown died on the 16th of May, 1930.

The present action was instituted to probate the second will, and was contested by appellant herein on three grounds, forgery, lack of testamentary capacity and undue influence exerted by respondents.

The court withdrew from the consideration of the jury the question of undue influence, and the jury found that decedent possessed testamentary capacity and signed the will.

The 87 assignments of error will be consolidated as far as possible.

Assignments Nos. 1, 2 and 3 challenge the court's withdrawal of the issue of undue influence, which he did on the ground that the issue was inconsistent with the grounds of lack of testamentary capacity and forgery. Respondents seek to sustain the court's action on the theory that undue influence is inconsistent with forgery, and that there was no pleading or evidence of undue influence, which latter point is not well taken, though, since a new trial is ordered, we will not discuss the evidence. Furthermore, respondents are in no position to assert there was no evidence as to undue influence, because that is in part the basis for the introduction of the testimony offered by them considered hereafter under assignments 30 et seq., *post*.

Appellant cites *Witthoft v. Gathe,* 38 Ida. 175, 221 Pac. 124, as sustaining his contention that the issues are not inconsistent. This case holds that *findings* of undue influence and want of testamentary capacity are not inconsistent. There can be no doubt that inconsistent findings of a jury in a will contest will not support a judgment. However, such is not the point herein. We have here the questions of whether claimed inconsistent *grounds* of contest may be alleged, evidence in support thereof presented; whether such issues may be submitted to the jury, and whether the court erred in requiring appellant to elect between any of such grounds of contest.

Counsel cite no cases passing directly on the question herein. The Indiana supreme court under a statute similar to ours, in considering a situation in which forgery and undue influence were two of the grounds of contest, held that a contestant may allege any statutory ground of invalidity of the alleged will without regard to consistency or repugnancy, and may introduce evidence to sustain one or more of the alleged grounds, and the court is not authorized to require the contestant to elect as to which he will seek to sustain. (*McDonald v. McDonald,* 142 Ind. 55, 41 N. E. 336. See, also, *In re Murphy's Estate,* 153 Minn. 60, 189 N. W. 413.)

Forgery, undue influence and lack of testamentary capacity were properly alleged as grounds of contest and the court erred in requiring an election and withdrawing from the jury the. question of undue influence, and appellant's requested instruction No. 1[1] should have been given.

---

[1] "Gentlemen of the jury, I am submitting to you three interrogatories. You will answer the first one, and, if your answer to that is that Willma Brown was not of sound mind at the time she executed the will in question, then it will be unnecessary for you to give any further consideration to the case. The first interrogatory is as follows:

"Interrogatory No. 1:

"At the time of the execution of the will here in question, May 10, 1930, was Willma Brown mentally competent to make and execute a will?

"Answer:

"If your answer to the foregoing question is that she was not competent you will not give any consideration to the next question, but, if your answer to the first question is that she was of sound mind, then you will answer the following question:

"Interrogatory No. 2:

"Did Willma Brown sign the will in question or authorize any other person to sign it in her presence and in the presence of the witnesses?

"Answer:

"If your answer to the foregoing question is that she did not sign or authorize the signing of the will in question, it will be unnecessary

(*In re Hellier's Estate*, 169 Cal. 77, 145 Pac. 1008.) In this connection, since a new trial is required, the court should, of course, instruct on undue influence, none on the subject having been given, since that issue was withdrawn from the jury.

Under assignment No. 4, appellant urges that the court erred in refusing to give his requested instruction No. 6.[2] While the subject matter thereof was to some extent covered by instruction No. 13[3] as given, a portion of re-

for you to answer the next question, but, if your answer should be that she did sign or authorize the signing of said will, then you will answer the further interrogatory, which is as follows:

"Interrogatory No. 3:

"At the time of the execution of the will here in question, was Willma Brown acting under undue influence of any person, as in these instructions defined?

"Answer:

"I am giving you these interrogatories which you will take to the jury-room with you and answer in accordance with your conclusions from all the evidence in the case."

[2] "I instruct you that what is called in the law undue influence, exercised over a person making or about to make a will, is seldom exercised openly, and consequently it cannot always be proven by direct testimony, but is shown, if it exists by a variety of facts and circumstances.

"In determining the effect of the circumstances disclosed by the evidence on the mind of the testatrix, you must consider the relationship of the parties, the manner and form of dealing and communication between them, the physical and mental condition and surroundings of the testatrix, her capacity and opportunity for independent thought and consideration and power of reasoning, her strength of memory, and her opportunity, if any, for having unbiased and unprejudiced counsel or advice."

[3] "The jury are instructed that, in determining the issues submitted to you under the instructions herein, you should carefully look to all of the evidence in the case, which consists of various facts and circumstances which have been detailed to you, and, in doing so, you should take into consideration the physical condition of said Willma Brown arising from her ailments, weakened condition, physical or mental infirmities, or any other cause, and the condition of the mind

quested instruction No. 6 should be given on the new trial as bearing on undue influence.

■ Assignment No. 5 challenges a certain portion of the opening statement of respondents' counsel to the jury, detailing the activities of appellant in connection with his interest in, and management of, decedent's affairs, and his securing living accommodations for her. The subject matter of these statements is more fully considered in connection with assignment No. 30 and assignments connected therewith, from which discussion it is apparent there was no error. Furthermore no motion to strike this portion of the opening statement was made, and therefore even though too broad or comprehensive, the statements were not prejudicial. (*Giffen v. City of Lewiston,* 6 Ida. 231, 55 Pac. 545; *Wheeler v. Oregon R. & N. Co.,* 16 Ida. 375, 102 Pac. 347; *Rasicot v. Royal Neighbors of America,* 18 Ida. 85, 138 Am. St. 180, 108 Pac. 1048, 29 L. R. A., N. S., 433; *Unfried v. Libert,* 20 Ida. 708, 119 Pac. 885; 38 Cyc. 1475.)

As to assignments Nos. 6 and 7, there was no ruling and no exception, and if any error, it was harmless though the evidence adduced did not appear material.

■ Assignments Nos. 8, 9, 10, 11, 12 and 13 challenge the interruption of the examination of appellant's handwriting expert Glick, for the introduction by respondent of certain envelopes and check stubs to be used as exemplars, all admittedly in the handwriting of decedent.

---

at and before the time of the execution of the will in controversy, the execution of the will and its contents, the relations existing between her and the parties respectively herein at and before the execution of the will in controversy, her family connections and the terms upon which she stood with them, the condition and relative situation of the legatees or devisees named in the will, the situation and circumstances of the testatrix herself and circumstances under which the will was made, and every fact or circumstance which tends to throw any light upon the question submitted to you; and from all these facts and circumstances you will return your verdict on the question as to whether or not the decedent, Willma Brown, was of sound and disposing mind and memory at the time she executed the will in controversy."

Although there were other examples of decedent's handwriting, there was no prejudice shown by the interpolated admission of these exhibits.

■ During the cross-examination of Glick, a handwriting expert for appellant, the following occurred:

"Q. I will ask you to examine Defendant's Exhibit A-3 (a check stub put in as written by decedent) and will ask you to state whether the 'a' isn't disjoined?

"A. That is disjoined, yes.

"Q. Did you ever examine writings that were written or names that were signed by persons when they were very sick?

"A. I have.

"Q. Is it your experience that when a person is in bed and very sick they write as firmly and strongly and regularly as when they are well and in sound health?

"A. They do not, but might I qualify my statement a little?

"Q. No, you can do your explaining later.

"Mr. Ailshie: I might suggest that he is entitled to explain after he has answered.

"The Court: After he has answered the question he may,

"A. Now may I state—

"Mr. Cox: The court says you may.

"A. All right.

"The Court: You must first answer the question and then after you have answered the question if you desire to make an explanation you may.

"A. I find there is a difference in signatures, but I don't find they will have one part of their writing so strong and another part so weak as you find there. I never have seen that before.

"Mr. Cox: That isn't responsive to my question and I move to strike it.

"Mr. Ailshie: I submit he has a right to—

"The Court: That isn't an explanation; that's an argument.

"Mr. Cox: It doesn't explain anything. It is just an argument. The witness seems to be taking every chance to make an argument.

"The Court: The answer will be stricken.

"Mr. Ailshie: If the Court please, may I say this: He was asked the question with reference to a sick person and his experience. Now, he has answered the question and then he made the explanation that he had never seen—

"The Court: Yes, and he starts to apply it—which wasn't asked him at all. He attempts to apply it to this signature. It was a general question and not with reference to this signature. The jury will not consider the last statement made by the witness.

"Mr. Ailshie: I except to the ruling of the Court.

"The Court: On redirect examination you can bring out what you want to."

Assignment No. 14 challenges the court's statements and ruling in excluding the answer:

"I find there is a difference in signatures, but I don't find they will have one part of their writing so strong and another part so weak as you find there. I never have seen that before."

While the objection should have been overruled, the ruling was not prejudicial in view of the fact that appellant was given the opportunity on redirect to bring out any matter desired.

■ Assignment No. 15 challenges the court's ruling in sustaining an objection to a question asked of Mrs. Burns, a witness for appellant, at whose home decedent was living at the time of making the will being contested, as to whether there was "anybody living in sight of your place there." There was no offer to show that the answer would have been favorable to appellant; therefore the ruling did not result in prejudice to appellant.

■ Upon cross-examination of Mrs. Burns, noted in assignment No. 16, she was asked as to the contents of certain letters written by her to Mrs. French, one of re-

spondents. The objection that this was not proper cross-examination was properly overruled.

By assignment No. 17 appellant complains that he was not allowed to show that respondents did not tell Mr. and Mrs. Burns of the making of the second will. Since appellant showed on statutory cross-examination of respondent Mrs. French that they (respondents) did not tell Mr. Burns, there was no reason why this evidence should not have been admitted. On the other hand, since it appears in the record otherwise, appellant was not prejudiced by being deprived of so showing.

Assignment No. 18: Appellant sought to examine Mr. Burns with regard to testimony given in probate court shown by the transcript there taken, in explanation of previous cross-examination upon such record. This assignment of error is well taken. If the previous cross-examination tended to impeach the witness' present testimony, appellant was equally entitled to clear up such impeachment or minimize its effect by likewise examining on the record.

Assignments 19, 20, 25, 26, 29 and 35 involved the trial court's refusal to permit appellant to show decedent's mental condition at times before and after the alleged execution of the contested will, May 10, 1930, varying from four to ten days before the tenth, and one to four days thereafter, as bearing on her testamentary capacity at the time of the alleged execution. The law is settled that physical and mental condition of decedents as bearing on their testamentary capacity both before and after the actual time of the execution of the will is admissible when not too remote, the remoteness bearing on the weight rather than the admissibility. This evidence should have been admitted. (*In re Smith's Estate*, 200 Cal. 152, 252 Pac. 325; *In re Pinney*, 27 Minn. 280, 6 N. W. 791, 7 N. W. 144; *In re Johnson's Estate*, 72 Cal. App. 663, 237 Pac. 816; *In re Barr's Estate*, 69 Cal. App. 16, 230 Pac. 181; *Prescott v. Merrick*, 46 N. D. 67, 179 N. W. 693; *Rodney v. Burton*, 4 Boyce (Del.), 171, 86 Atl. 826; *Voodry v.*

*Trustees of University of Illinois,* 251 Ill. 48, 95 N. E. 1034; *Kellan v. Kellan,* 258 Ill. 256, 101 N. E. 614; *Brainard v. Brainard,* 259 Ill. 613, 103 N. E. 45; *Taylor v. Taylor,* 174 Ind. 670, 93 N. E. 9; *Harris v. Hipsley,* 122 Md. 418, 89 Atl. 852; *Lyon v. Townsend,* 124 Md. 163, 91 Atl. 704; *In re Winch's Estate,* 84 Neb. 251, 18 Ann. Cas. 903, 121 N. W. 116; *Surface v. Bentz,* 228 Pa. 610, 21 Ann. Cas. 215, 77 Atl. 922; *Coberly v. Donovan,* (Mo. Supp.) 208 S. W. 47; *In re Staub's Will,* 172 N. C. 138, 90 S. E. 119; *In re Stock's Will,* 175 N. C. 224, 95 S. E. 360; 1 Wigmore on Evidence, 2d ed., p. 487, sec. 233; 40 Cyc. 1028; Alexander, Comm. on Wills, p. 436, sec. 327; 1 Page on Wills, 2d ed., p. 1179, sec. 702.)

Assignment No. 21: Upon statutory cross-examination of respondent Mrs. French, the following question was asked anent where she was at the time of the execution of the will and how she knew when or at what time of the day it was executed:

"Q. Well, now what is there that makes you know that it was before he left? (*he* referred to her husband, respondent French)."

The court sustained respondent's objection that the question sought information not peculiarly within the witness' knowledge. Obviously no one other than the witness would know as well as she what it was that made her know the sequence of events, and the ruling was erroneous.

By assignment No. 22 the court sustained an objection to a question asked of the same witness:

"Q. Where were you when this document you present here as a will was executed or signed?"

The question was in effect answered later, so there was no prejudice.

Assignment No. 23 is without merit because the information was not solely within the knowledge of the witness and hence not proper statutory cross-examination. (*Boeck v. Boeck,* 29 Ida. 639, 161 Pac. 576.)

Assignment No. 24 concerned the following situation: Mrs. Crippen, who was a near neighbor of the decedent

during her residence in Clarkston, with whom she frequently visited, testified as to decedent's relations with respondents. Appellant sought to show such knowledge by her perusal of certain letters received by decedent from respondents. The objection was that the letters were the best evidence. While demand was made by appellant upon respondent for the letters, such demand was not followed up, nor was it shown that appellant himself did not have the letters, consequently objection on that ground was properly sustained.

Assignment No. 27 concerns the comment and ruling of the court in connection with appellant's objection to where counsel for respondent stood when examining one of appellant's witnesses. The trial court is possessed of wide discretion in the conduct of a trial, and the record does not disclose any prejudicial error in connection with such assignment.

The court's remarks assigned as error under assignments Nos. 28, 36 and 68 were not excepted to, so there is nothing for us to rule on. (*State v. Smailes*, 51 Ida. 321, 5 Pac. (2d) 540, at 543.)

By assignments 32, 33, 34 and 70, appellant complains that he was not allowed to show that respondents, immediately after the alleged execution of the contested will, walked from the Burns home and apparently had something in their hands. There was nothing so significant in respondents' action in this regard to make the ruling excluding such testimony, while admissible, erroneous or prejudicial.

Assignments Nos. 30, 31, 37, 38, 39, 46, 47, 52, 53, 54, 55, 56, 57, 58, 59, 60, 61, 62, 64, 67, 72, 73, 78 and 87 all challenge the scope and extent of the examination by respondent of witnesses to show the relationship between contestant, appellant, and the decedent, as bearing upon whether decedent would probably have made a will revoking the first, and whether she had reason to do so; that is, whether her attitude toward appellant had changed from the time she had made the former will in his favor. The

authorities sustain a wide range of inquiry under such circumstances, many on the theory that such evidence is admissible for the purpose of showing a changed feeling on the testator's part, as opposed to evidence of undue influence. (*Heathcote v. Barbour,* 39 R. I. 485, 98 Atl. 49; *In re Barney's Estate,* 71 Vt. 217, 44 Atl. 75; *In re Quinn's Estate,* 180 Mich. 502, 147 N. W. 566; *In re Dale's Estate,* 92 Or. 57, 179 Pac. 274; *In re Clogston's Estate,* 93 Vt. 46, 106 Atl. 594; *Seibert v. Hatcher,* 205 Mo. 83, 102 S. W. 962; *Monahan v. Roderick,* 183 Iowa, 1, 166 N. W. 725; *In re Arnold's Estate,* 147 Cal. 583, 82 Pac. 252.)

The comment of the court under assignment No. 36 was out of the presence of the jury, so there was no error.

Assignments Nos. 40 and 45: Upon the statutory cross-examination of appellant, he was asked as to how much decedent owed the American National Bank in Lewiston, and what she had inherited upon her father's death. Obviously this was not information solely within appellant's knowledge (*Boeck v. Boeck,* 29 Ida. 639, 161 Pac. 576), but the errors were not prejudicial because the witness later in effect gave the same information without objection.

Assignment No. 41: There was no objection and no ruling, hence no error, the general assignments covering such examination considered under assignments 30 et seq., *supra,* not being well taken.

Assignments Nos. 42, 43 and 44 cover the cross-examination of appellant in connection with the transcript of his testimony given in the probate court. From the record there was evidently considerable confusion between counsel and the court as to what lots or parcels of land counsel for respondent was asking about, and those the witness had in mind in answering. This confusion will no doubt not occur on retrial.

In assignment No. 48 appellant urges that he was entitled after his witness had been subjected to statutory cross-examination to cross-examine, not examine as in chief. The rule has been declared otherwise. (*Barton v. Dyer,* 38 Ida. 1, 7, 220 Pac. 488.)

██ Under assignment No. 49 appellant claims that he was deprived of the right to show by Dr. Fite the relative value of two pieces of real estate, which respondent contended the decedent had respectively sold and purchased at appellant's instigation. Respondent contends that the deal was not advantageous, and that was one of the reasons why she desired to leave her property to others than appellant. The evidence was material and relevant under appellant's theory that the deal was advantageous, but the relative worth of the two properties was later gone into, so no prejudice appears.

██ Under assignment No. 50 appellant assigns as error the refusal of the court to allow the witness Fite to testify as to what the regular charges for chiropractic services rendered decedent would have been if charges had been made. No offer of testimony was made, however.; therefore there was no prejudice in this ruling.

██ Under assignment No. 51 appellant urges that the court erred in permitting appellant to be examined relative to certain documents, deeds, etc., showing decedent's business transactions and appellant's connection therewith. Respondent withdrew the particular question challenged by the assignment, and so there was no error. Likewise the question assigned as error in assignment No. 63 was never answered.

Appellant sought to show respondents' indifference to decedent; that they had not visited her nor had her visit them, and respondents sought to excuse their absence and failure to have decedent visit them. There was evidently some confusion as between the dates 1929 and 1926 in connection with assignments Nos. 65 and 66, but no prejudice or error appears in connection therewith.

No exception was taken to afford a basis for assignment No. 69.

██ Assignment No. 71: Mrs. French had stated that she was not present when the will was signed. Who was present and the circumstances of the signing were im-

portant. In the course of examination, she was asked this question:

"Q. Well, you said you didn't see it signed, and you didn't see it in the house; now how do you know he had it? (the *he* referred to was her husband)."

The objection should not have been sustained.

Assignment No. 74 is without merit for the reason that the court permitted the witness to answer the question.

Assignment No. 75: In rebuttal, appellant asked his witness Burns this question:

"Q. Now, Mr. Burns, did Miss Brown say anything to you after the purchase of this place with reference to whether she was pleased or displeased with the transaction, of selling the other place and purchasing this place?"

This was objected to on the ground that it was not proper rebuttal. The respondents had exhaustively examined as to decedent's business dealings with appellant and her resultant attitude toward appellant, and appellant should likewise have had the opportunity to go into these matters, and his rights were restricted in this particular, as is apparent when compared with assignments 30 et seq., *supra*.

Respondent introduced certain letters written by decedent, containing statements as to her feeling toward appellant. Under assignment No. 76 appellant challenges the court's action in sustaining respondents' objections to a question asked of Mrs. Burns, and under assignments Nos. 80 and 81, questions asked appellant, in explanation as to some of the statements in these letters. Such explanations were admissible. (*Douglas v. Douglas*, 4 Ida. 293, 38 Pac. 934; *Idaho Placer Min. Co. v. Green*, 14 Ida. 249, 93 Pac. 954; *Schwarz v. Taeger*, 44 Ida. 625, 258 Pac. 1082; 4 Jones on Evidence, 2d ed., sec. 1614, p. 2948; Chamberlayne, Evidence, sec. 2680, p. 3670.)

Under assignment No. 77 appellant cites the court's action in striking several answers given by appellant's witness Mrs. White, and criticising her for giving her conclusions instead of answering the questions. The trial court, of course, has wide discretion in the conduct of the trial, and

it is impossible to say from the record whether the rulings were too severe, although one might not unreasonably infer from the record that the witness was honestly attempting to testify, and perhaps was badgered and confused by the altercation between court and counsel.

Assignments Nos. 79 and 86 raise this point: Appellant sought to show only the date of the first will as bearing upon the testimony concerning the relationship and attitude of decedent toward appellant and respondent, in connection with the extensive field of inquiry in regard to the various personal and business dealings noted under assignments 30 et seq., *supra*. Respondent urges that if any portion of the former will was competent, the entire document should be admitted. The court was of the same opinion, and appellant was forced to put in the entire will, which he contends was prejudicial, because therefrom the jury might have considered that it was a contest between the two wills. The general rule is that an entire instrument must be admitted. (22 C. J., pp. 972, 973, secs. 1217, 1218.) Whether the date was material would depend on whether this was the will referred to in the second will and the testimony as to appellant's dealing with decedent's affairs and her attitude towards him. More was involved than the mere date, hence *Fritcher v. Kelley,* 34 Ida. 471, 478, 201 Pac. 1037, would not control, and the ruling was correct.

The information sought under assignment No. 82 was later secured and removed any error in the restrictive ruling.

Counsel for respondent asked appellant if decedent had joined in a certain mortgage. The objection that the mortgage was the best evidence should have been sustained, as urged in assignments 83, 84 and 85.

Judgment reversed and a new trial ordered. Costs to appellant.

Lee, C. J., Budge and Varian, JJ., and Reed, D. J., concur.

Petition for rehearing denied.