[No. 23704. Department One. September 20, 1932.]

THE STATE OF WASHINGTON, *Respondent*, v. WENATCHEE VALLEY HOLDING COMPANY *et al.*, *Appellants*.[1]

[1]Reported in 14 P. (2d) 51.

*Alfred Gfeller, Hughes & Hughes,* and *D. A. Shiner,* for appellants.

*The Attorney General* and *E. P. Donnelly, Assistant,* for respondent.

PARKER, J.—The state commenced this eminent domain proceeding in the superior court for Chelan county, seeking to acquire a right of way for a state highway over land the legal title to which is in the Wenatchee Valley Holding Company; M. S. Stewart and wife having an interest therein under a contract with the holding company for the purchase thereof and having paid a portion of the purchase price. Proceedings were had in the cause, resulting in there being duly rendered by the court on August 15, 1931, an order adjudicating public use and necessity for the state acquiring the right of way. Neither the holding company nor the Stewarts sought any review of that adjudication.

On September 25, 1931, the matter of determination of the amount of compensation the state should pay for the taking of the right of way and the damage, if any, to the adjoining land of appellants, came on for trial in the superior court, sitting with a jury; which trial resulted in fixing such compensation in one lump sum of $1,800. No request was made by any of the parties to have the compensation determined other than in one lump sum without segregation of the rights of the holding company and Stewart and wife as between themselves. Final judgment was rendered upon the verdict accordingly, from which the holding company and Stewart and wife have jointly appealed to this court.

The right of way in question is a strip of land 120 feet wide and approximately 1,000 feet long northerly and southerly, consisting of 2.56 acres, lying in the

form of a long curve, the outer line of which is to the west. It is to be taken from a tract of land of appellants consisting of 11.22 acres. There will be left of the whole of the tract west of the right of way 6.59 acres. There will be left of the whole of the tract east of the right of way 2.07 acres.

There runs northerly and southerly through this 2.07 acres an open irrigation ditch. The ditch also crosses the new highway just north and south of the land of appellants to be taken. The right to maintain this ditch seems to be in a company or persons other than appellants. We are not advised as to the exact nature or extent of this ditch right of way. Apparently, however, appellants have the right to cross the ditch right of way at all points upon their land, but not to interfere with the ditch or the flow of the water therein.

The evidence took a rather wide range touching the value of the land to be taken, and also touching the damage or benefit resulting to the remaining portions of the whole tract east and west thereof, in view of the physical improvements of the highway to be made by the state on the right of way. The evidence is in serious conflict, save as to the nature of the physical improvement of the highway to be made by the state.

When the cause was pending upon the question of public use and necessity, counsel for Stewart and wife moved the court to dismiss the cause as to them, upon the ground that they were not the fee owners of any portion of or any interest in the land across which the right of way was sought to be taken; alleging the existence of their contract for the purchase of the land from the holding company by installment payments and the payment by them of only a portion of the purchase price. The contract was recorded in the office of the auditor of Chelan county. The court denied this mo-

tion. This ruling is now claimed by their counsel to have been erroneous.

The argument seems to be that Stewart and wife were not either necessary or proper parties to the condemnation proceeding. Clearly, we think they were, at all events, proper parties to the condemnation proceeding, in view of their purchase contract which had been recorded in the office of the auditor of Chelan county. *Olson v. Seattle,* 30 Wash. 687, 71 Pac. 201; *State ex rel. Trimble v. Superior Court,* 31 Wash. 445, 72 Pac. 89, 66 L. R. A. 897; *State ex rel. Oatey Orchard Co. v. Superior Court,* 154 Wash. 10, 280 Pac. 350; *Culmback v. Stevens,* 158 Wash. 675, 291 Pac. 705.

Had Stewart and wife, by an appropriate writing, unqualifiedly disclaimed all interest in the land and all right to enforce their contractual rights with reference to the purchase thereof, there might have been a technical ground for dismissing them out of the condemnation proceeding; but even then we would be wholly at a loss to see how a denial of dismissal would in the least work to a prejudice of their legal rights, since they would not be subject to be charged with any costs in the proceeding, this being an eminent domain proceeding. Clearly, we think the court did not err, even technically, in denying the motion to dismiss made by Stewart and wife.

It is contended in behalf of appellants that the trial court erred to their prejudice in proceeding with the trial of the cause with a jury that was selected before a court commissioner presiding as judge for that one purpose. We are informed as to what occurred in that regard by the first paragraph of the statement of facts duly certified by the trial judge, reading as follows:

"BE IT REMEMBERED that the above entitled cause came on regularly for hearing in the above entitled

court before the Honorable W. O. Parr, judge thereof, on Friday, September 25, 1931, petitioner being represented by John H. Dunbar, attorney general, and E. P. Donnelly, assistant attorney general, and respondents being represented by their attorneys, Alfred Gfeller, Esq., Messrs. Hughes & Hughes, and D. A. Shiner, Esq. The court then being engaged in the trial of another case, on oral consent and agreement of counsel for both parties hereto a jury was selected before the Honorable John E. Porter, court commissioner of the above entitled court, was sworn by a deputy clerk to try the case and visited the premises involved in this action and on returning from said visit to said premises was thereafter excused by the court until Saturday morning, September 26, 1931, at 9:30 o'clock A. M., at which time before said court, Hon. W. O. Parr, judge thereof, sitting with said jury, the following proceedings were had and done, to-wit:''

This is as far as we are advised by the statement of facts as to the selection and swearing of the jury and their visiting the premises, save that the evidence shows that counsel for all parties visited the premises with the jury and pointed out to the jury the location of the right of way to be taken and the location and boundaries of the whole of the land from which the right of way was to be taken. The final judgment recites:

''This cause coming on duly and regularly for trial on the 25th day of September, A. D. 1931, before the above entitled court, and a jury of twelve persons, being impaneled and sworn to ascertain, determine and award the compensation, . . .''

This language, read alone, strongly suggests that the jury was sworn in open court before the judge, though the above quotation from the statement of facts suggests that the jury was sworn by the deputy clerk of the court before the court commissioner, and not before the judge. However, we shall assume for pur-

poses of argument that the jury was sworn before the court commissioner, and not before the judge.

It is argued that the court commissioner was wholly without jurisdiction over the subject matter of selecting and swearing the jury, and that, therefore, the consent of counsel for the respective parties was, in legal effect, ineffectual because it was, in substance, a consent to the commissioner assuming jurisdiction over a subject matter over which he did not have jurisdiction. There is invoked in support of this argument Art. IV, § 23, of our constitution, and Rem. Comp. Stat., § 85, relating to court commissioners and their powers; and also our decisions in *Peterson v. Dillon,* 27 Wash. 78, 67 Pac. 397; *State v. Philip,* 44 Wash. 615, 87 Pac. 955; *State ex rel. Lockhart v. Claypool,* 132 Wash. 374, 232 Pac. 351, and *State ex rel. Biddinger v. Griffiths,* 137 Wash. 448, 242 Pac. 969, holding, in substance, that court commissioners, under our state constitution and statutes, possess only such power as the territorial district courts at the time of the adoption of our constitution might exercise at chambers, and no more, which excluded trial of cases with a jury.

When the jury returned into court after having been selected and having visited the premises as above noticed, all parties then consented to proceed with the trial before the jury as then made up; except as to one juror presently to be noticed, no other objection being made to the jury as then made up. So we then have before the court a jury ready for trial of the case, all parties consenting to proceed with the trial before such jury without any objections as to the manner of its selection until after the rendering of the verdict. It seems plain to us that it is now too late for appellants to be heard as to any irregularity in selecting the jury, regardless of any want of jurisdiction in the court commissioner. The consent of all parties cured all

irregularities not only as to the manner of selecting the jury, but also as to the jury's viewing the premises.

Let us assume that the jury was not sworn in open court before the judge. Let us even assume that the jury was not sworn at all. Was that reversible error, in view of all parties having full knowledge thereof, and the failure of anyone calling it to the attention of the trial court until after the rendering of the verdict? We think not. In the early, leading case of *Scott v. Moore*, 41 Vt. 205, 98 Am. Dec. 581, it was squarely held that the fact that a juror is not sworn in a civil case is an irregularity which the parties may waive, and that the court should not set aside a verdict for that cause, unless the party asking it, as well as his counsel, was ignorant of the fact during the trial. In *Griffin v. Pitman*, 8 Ore. 342, we have the same holding, Chief Justice Kelly, speaking for the court, saying:

"If, through inadvertence, it happens on the trial of a cause that the justice fails to swear the jury, and either party, being present and aware of that fact, remains silent and takes the chances of a verdict in his favor, he will not be permitted to question the validity of it, if the verdict should prove unfavorable to him."

These views find support in the following later decisions: *Texas & Pacific Ry. Co. v. Butler*, 52 Tex. Civ. App. 323, 114 S. W. 671, 102 Tex. 322, 116 S. W. 360; *Ross v. Grand Pants Co.*, 241 Mo. 296, 145 S. W. 410; and *Towns v. Rome Ry. & Light Co.*, 19 Ga. App. 457, 91 S. E. 790. See, also, note in L. R. A. 1917D, p. 401. We are of the opinion that there is no reversible error in the manner of impaneling, swearing, or even in failure to swear, the jury.

■ When the court opened on Saturday, September 26, 1931, with the jury present, in pursuance of the

adjournment of the preceding day, counsel for appellants announced:

"If the court please, there is a preliminary matter I would like to take up before the court, in the absence of the jury."

The court then directed the jury to retire until called. Counsel for appellants then stated:

"The information reached me, as one of the counsel for the defendants, that one of the jurors yesterday, Mr. Sam Long, after the jury had been empaneled and viewed the premises, made statements in the corridor, in the presence of other parties and the witness who heard them, to the effect that, if he had anything to do with it, 'the owner of the sandpile out there (the defendant) wouldn't recover very much in this case.' And we move the court to disqualify the juror, and either dismiss this panel or fill the juror's place with another juror, and we ask leave of the court to call Mr. Joe Mooney, as a witness to prove the statement."

Thereupon, the juror Long was called into the court room, and the witness Mooney was orally examined upon oath as a witness in support of the motion made in behalf of appellants. Mooney then testified, upon direct examination, in part, as follows:

"Q. Mr. Mooney, you are acquainted with Mr. Long? A. Yes. Q. Did you see him yesterday afternoon in the corridor of the courthouse? A. Yes. Q. What time yesterday afternoon was it you saw him? A. Three o'clock, I guess. [This was after the jury had viewed the premises.] Q. Did you hear him make any statements about this condemnation case at that time? A. Yes; I was standing off a little ways. Q. Who was he making them to, do you know? A. I don't . know. It was a general conversation. Q. Just tell the court as near as you can remember what Mr. Long said. A. Well, he remarked—and I think Sam will agree with me on it—was, that he would not give very much for that sand pile out there. I believe that was the way Sam put it. Q. Was there anything said about

this particular case? A. The conversation, as I understood, led up to this Saturday court, and I heard Sam say that he didn't believe or wouldn't give or be in favor of giving much on that sand pile out there, referring to the piece to be condemned.''

Upon cross-examination, he testified:

''Q. How do you know he was talking of that? A. Well, if it was a condemnation suit coming up that was the only thing I knew he was talking about. Q. You don't think he said 'Personally, I wouldn't give much for that.' A. Wouldn't give or wouldn't allow —something to that effect, that he was not in favor of allowing, is the way I took it. I didn't pay any particular attention at that time, but it just dawned on me afterwards that that was a peculiar remark for a man to make.''

Long, the juror, then testified, upon direct examination, as follows:

''Q. Did you make any statement along the line that Mr. Mooney said you did? A. As near as I remember, I was talking to some of the boys of this jury, and if he heard what I said he knows I said, 'It looks to me like they could settle that out of court.' Q. Did you make any statement that you wouldn't allow very much? A. No, sir; all I said was they ought to be able to settle it out of court. I didn't make my mind up, I just mentioned the fact that it ought to be settled out of court.''

On cross-examination, Long further testified:

''Q. Mr. Long, since this question has arisen now, brought up by Mr. Hughes, that would not prejudice you one way or the other? A. Not a bit. I haven't given the case any thought at all, that is, all I remember saying, 'It looks like it ought to be settled out of court.' ''

This is all the evidence of any moment touching the alleged disqualification of Long as a juror. The refusal of the trial judge to rule that Long was dis-

qualified as a juror is assigned as error prejudicial to appellants.

In view of the evidence touching the alleged disqualification of Long as a juror being all oral, the not very great degree of certainty as to what Long had said, even according to the testimony of Mooney, and the direct and plain denial by Long as to making any statements as to talking about the case, other than expressing his opinion that it ought to be settled out of court, it seems to us we should not hold that the trial judge abused his discretion in overruling the challenge. Long's expression of his opinion that the case ought to be settled out of court, which the trial judge was warranted in believing was all he said, does not, as the trial judge was warranted in viewing that expression, evidence any bias or prejudice for or against either the state or appellants. *Hansen v. Lemley,* 100 Wash. 444, 171 Pac. 255; 20 R. C. L. 256.

One of the state's engineers was a witness for the state. He described the highway improvement which the state had planned and intended to make along the right of way to be acquired. This was not objected to. Indeed, counsel for appellants evidently wanted the proposed physical improvement along the right of way fully described to enable them to argue that it would enhance their damages to the land not taken, rather than benefit such land. However, the witness went somewhat further in response to questions by counsel for the state which were answered over the objection of counsel for the appellants. His testimony, on direct examination, in that regard, is as follows:

"Q. What do the plans for the construction of the highway show as to the construction or to replace the Gunn ditch. A. We plan on piping the ditch."

On cross-examination, he testified as follows:

"Q. Do I understand that a part of this improvement is that the state highway department is going to pipe and make some improvement to this Gunn ditch? A. Yes. Q. Are you able to say just what they will do to that? A. No, I am not. Q. You don't know whether they are going to pipe? A. Yes, they are, but the agreement has not been reached with the Gunn ditch people, providing it is satisfactory to the Gunn ditch people. But as far as the highway department is concerned, they will pipe the ditch. Q. You don't know whether these plans have been completed with the ditch people or not? A. I couldn't say."

This direct and cross examination and the answers thereto constitute the whole of the testimony of any moment touching any proposal on the part of the highway department to do anything to the Gunn ditch.

It is true that the so-called piping of the Gunn ditch seems foreign to any question of damages or of benefits to be considered in this case, since that does not constitute any of the proposed improvements on the right of way to be taken. But this testimony suggests only the probability of the piping of the ditch; whether where the ditch crosses the new highway alone, or where it also crosses appellants' land, the evidence does not show. Besides, it is not suggested in the evidence that the piping of the ditch would divest the proprietors thereof of their right of way. Nor is there any suggestion as to the manner in which it would be piped, or that the land east of the highway would be either increased or decreased in value by the piping of the ditch rather than leaving it open. While it may well be argued that the introduction of this testimony was technically erroneous, we think it was so plainly without prejudice as not to call for a new trial.

It is contended that the compensation awarded

to appellants by the verdict and judgment is inadequate, and that it should have been so decided by the trial court as a matter of law, and a new trial granted for that reason. As we have noticed, the evidence is in serious conflict touching the amount of compensation for the taking of the land for the right of way, and also as to damage and benefits resulting to the remaining land from such taking, in view of the physical improvement to be made by the state. The award was well within the evidence. We cannot say that the trial judge abused his discretion in refusing to disturb the award; he, as well as the jury, saw and heard the witnesses testify, and the jury viewed the whole of the land from which the right of way was to be taken. *In re Mercer Street,* 55 Wash. 116, 104 Pac. 133; *Tacoma v. Hansen,* 59 Wash. 594, 110 Pac. 426; *In re Renton,* 61 Wash. 330, 112 Pac. 348; *Stimson Mill Co. v. Troxel,* 113 Wash. 108, 193 Pac. 213; *Longview, Portland & N. R. Co. v. Olson,* 131 Wash. 4, 228 Pac. 699.

Contention is made in behalf of appellants that one or two of the state's witnesses were not qualified to testify as to the value of the land taken and as to damages or benefits to the land remaining. We deem it sufficient to say that we have carefully noticed these contentions and think that the discretion on the part of the trial judge was not abused in his ruling as to the qualifications of these witnesses to so testify.

The judgment is affirmed.

TOLMAN, C. J., MITCHELL, STEINERT, and HERMAN, JJ., concur.