438 P.2d 904

STATE of Idaho, Plaintiff-Respondent,

v.

David James CYPHER, Robert William Mueller, Defendants-Appellants.

No. 9749.

Supreme Court of Idaho.

March 20, 1968.

Rehearing Denied April 16, 1968.

James Annest, Burley, Cauley, Birsic & Clarke, Pittsburgh, Pa., for appellants.

Allan G. Shepard, Atty. Gen., and Daniel A. Slavin, Asst. Atty. Gen., Boise, for respondent.

SMITH, Justice.

Appellants (defendants) each were charged by separate informations and were adjudged guilty of the crime of robbery. They appeal on several grounds, principally contending error committed by the trial court in refusing to dismiss the cases upon their plea of having been once in jeopardy,

or in the alternative, in refusing to grant a change in venue, and a new trial.

The alleged crime occurred the evening of August 14, 1964, at Parish Motel in Burley, Idaho. During that evening, two men entered the motel premises and, in attempting to rob the motel, shot and wounded Mrs. Norma Newcombe, who was attending the motel in the absence of its owners. The two men took what money was in the cash drawer, approximately $26.00, and disappeared. Mrs. Newcombe's 13-year-old daughter, Ruth Marie Newcombe, witnessed the commission of the crime. Gail Shattuck, who was in another part of the building, arrived shortly thereafter.

Floyd Higens, deputy police sergeant for the city of Burley and Cassia County deputy sheriff Woodall arrived at the motel soon after the crime, and obtained descriptions of the men from Mrs. Newcombe. Higens ascertained that men fitting the descriptions had been seen by several citizens at various places in Burley on the day of the crime. The morning following the robbery, a local farmer provided Higens with the names of two itinerant laborers who had worked for him during the previous week and who met the descriptions provided by Mrs. Newcombe. Upon receiving the names and possible whereabouts of these men, the Burley police called the Pennsylvania State Police Detective Bureau. Five days after the call, the police received a letter from Pennsylvania containing photographs of the two suspects. They were identified as the appellants by Ruth Marie Newcombe, by Mrs. Newcombe, and by Mrs. Teddy Allen, an employee at a restaurant in Burley.

Subsequent to identification of the suspects, warrants were issued for the arrest of appellants, and they were arrested by F.B.I. personnel in Pittsburg, Pennsylvania. Appellants executed waivers of extradition, and Officer Higens and Cassia County Sheriff Warrell traveled to Pittsburg and returned them to Idaho.

At the conclusion of a preliminary hearing held October 9, 1964, appellants were

bound over to the district court, and each was duly charged with the crime of robbery.

The cases came on for trial on March 4, 1965, in Cassia County, before Hon. Lloyd J. Webb, a district judge of the then eleventh (now fifth) judicial district, and a jury. The State, as its first witness, called and questioned Mr. Higens. Defense counsel then cross-examined Mr. Higens, with the following exchange taking place:

"Q Did you ask him [Mueller] for a sample of his hair so that you could ·have it tested?

"A No. I didn't.

"Q You did not do that. Isn't it a fact, fact, Mr. Higens, that Mr. Mueller asked you to test his hair?

"A I don't recall that.

"Q Didn't he ask you to use every scientific test or every available test of science that was available to determine whether or not he was the man who did this job?

"A But he didn't ask me to take any scientific test to determine the hair at all.

"Q Didn't he ask you about a lie detector, Mr. Higens?

"Mr. Smith [prosecuting attorney]: Your honor * * *

"The Court: Not only do I sustain the objection, I declare this case a mistrial. Ladies and gentlemen, you are discharged. We will try this case again some other day. That's all, the jury is excused. The defendants are remanded to the custody of the County Sheriff of Cassia County."

March 28, 1965, following the declaration of mistrial, Judge Webb, deeming himself disqualified in both causes, entered orders of disqualification.

June 28, 1965, the cases came on for trial in Cassia County before Hon. Thomas H. Felton, a ·district judge of the second judicial district to whom the cases had been duly assigned for trial, and before a jury.

Shortly before the second trial, appellants moved the trial court for dismissal of the cases upon the ground that appellants had been once in jeopardy and further moved the court for rearraignment. At the same time, appellants moved for a change of venue, claiming that the feeling in the community had become so intense against both defense counsel and appellants that an impartial trial could not be had in Cassia County or in the eleventh judicial district, which motions the trial court denied.

Forty-three prospective jurors, all of whom had some knowledge of the cases, were examined on voir dire at the second trial. Appellants used all ten of their peremptory challenges. Of the twelve trial jurors, and alternates selected, two were clients of the prosecutor's firm and one was an employee of the prosecutor's office. Nine jurors had read of the crime in local newspapers, three had heard or discussed the case with someone, and ten were acquaintances of one or more of the State's witnesses.

Appellants were adjudged guilty of the crime of robbery, and their motions for new trial were denied. They have appealed from the judgments of the trial court entered against them in favor of the State upon their pleas of being once in jeopardy; also from the judgments of conviction, and from the orders denying new trial and arrest of judgment.

Appellants, by their assignments, contend that the trial court erred in the first trial in declaring a mistrial in that there was no manifest overriding or extraordinary necessity requiring mistrial; that by such action jeopardy attached to prevent a second trial of appellants for the same charged offense; and that the declaration of mistrial under such circumstances, inasmuch as appellants did not consent thereto, was tantamount to the acquittal of appellants. They base their reasoning on the proposition that no person shall be twice put in jeopardy for the

same offense. U. S. Constitution, Amendment 5; Idaho Constitution, Art. I, § 13.

Judge Webb declared a mistrial of the first trial after appellants' counsel had propounded a question on cross-examination to the State's witness Higens as to whether appellant Mueller had asked "about a lie detector," ostensibly as a scientific test to determine whether "he was the man who did the job." Bearing upon his actions Judge Webb's affidavit dated June 16, 1965, appears in the record, in which he stated:

"At a hearing held the day before trial in the above-entitled matter, which hearing was concerned with additions of witnesses not endorsed upon the Information, this affiant advised counsel for the defendants and counsel for the State that there could be no comment in the trial or questioning in the trial concerning sodium pentothal testing or other forms of lie detector testing without argument in the absence of the jury on this subject; and that affiant did further, in open court, advise counsel, both being present, that if this subject was in any manner brought before the jury in the absence of such foundation and legal argument, that the affiant would declare the case a mistrial. Counsel for the defendants apparently understood the expressed position.

"On the second day of the trial, on about the fourth or fifth question directed on cross-examination to the State's first witness, counsel for the defendant asked a question concerning whether the defendants had asked for lie detector testing, specifically contrary to the instructions of the Court two days previous. Whereupon counsel for the plaintiff objected, and this affiant sustained the objection and declared the case to be a mistrial because of the attempted introduction of material believed to be inadmissible and for which no legal foundation had been laid.

"Affiant has been advised since the mistrial that this was not the intention of counsel for the defendant, but it appeared from the question directed by counsel for the defendants that counsel was directly contravening the order of the Court in this regard."

The following excerpts are taken from the affidavit of appellants' counsel, dated June 20, 1965, replying to Judge Webb's affidavit:

"4. That on Monday, March 1, 1965, two days before trial, affiant at a hearing upon defendants' motion to suppress certain evidence illegally obtained informed the court that the defendants had received the sodium pentothal examination * * *;

"5. That at said time, the court admonished counsel for defendants that he did not desire any mention made of the sodium pentothal examination unless the matter was first submitted to the court outside the presence of the jury; that he likewise stated that if it were mentioned without having first presented the matter to the court outside the presence of the jury that he would declare a mistrial of the cause; that he also stated at that time that his mind was not closed on the admissibility of the evidence but that he desired counsel for the State and counsel for defendants to submit authorities;

"6. That to the best of affiant's recollection no mention whatsoever was made as to any other form of examination and particularly there was no mention made of the lie detector or polygraph examination made in the court's admonition at the hearing held on March 1st, and affiant did not understand that the court intended to preclude him from examining into any evidence which bore upon the state of mind of the defendants at the time of their apprehension except insofar as evidence surrounding the issuance of a pentothal examination;

\* \* \* \* \* \*

"9. That your affiant did in no way violate or intend to violate any order of the court or to disregard any previous

admonition of the court and does not now intend to do so;"

The reason for the trial judge's declaration of mistrial, to be gleaned from the showings aforesaid appears to have been grounded in prejudice, i. e., an attitude of mind on his part under the circumstances as he felt the same to be that he could not further preside at the trial of the cases in the requisite judicial capacity as to afford a fair and impartial trial to each appellant. If, in his opinion, the ends of substantial justice could not have been attained by continuing the first trial, then in the exercise of sound discretion he could not have done otherwise than declare a mistrial.

The most recent decision exhaustively examining the double jeopardy rationale is Gori v. United States, 367 U.S. 364, 367, 368, 81 S.Ct. 1523, 1526, 6 L.Ed.2d 901, 904, 905 (1961). In that case, the United States Supreme Court stated in pertinent part:

"Since 1824 it has been settled law in this court that 'The double-jeopardy provision of the Fifth Amendment * * * does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' Wade v. Hunter, 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974. United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165; Thompson v. United States, 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146; Keerl v. State of Montana, 213 U.S. 135, 137–138, 29 S.Ct. 469, 53 L.Ed. 734; see Ex parte Lange, 18 Wall. 163, 173–174, 21 L.Ed. 872; Green v. United States, 355 U.S. 184, 188, 78 S.Ct. 221, 2 L.Ed.2d 199. Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment. Simmons v. United States, 142 U.S. 148, 12 S.Ct. 171, 35 L.Ed. 968; Logan v. United States, 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429; Dreyer v. People of State of Illinois, 187 U.S. 71, 85–86, 23 S.Ct. 28, 32–33, 47 L.Ed. 79. It is also clear that 'This court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will be best served * * *,' Brock v. State of North Carolina, 344 U.S. 424, 425, 427, 73 S.Ct. 349, 97 L.Ed. 456, and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion. See Lovato v. State of New Mexico, 242 U.S. 199, 37 S.Ct. 107, 61 L.Ed. 244; cf. Wade v. Hunter, supra."

In United States v. Perez, 9 Wheat. 579, 6 L.Ed. 165, the authoritative starting point of federal law in this field, Mr. Justice Storey voicing the holding of a unanimous court, stated:

"* * * We think that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests in this, as in other cases, upon the responsibility of the judges, under their oaths of office. * * *"
United States v. Perez, 9 Wheat. at 580.

See also Ex parte McNaughlin, 41 Cal. 211, 10 Am.Rep. 272 (1871); State v. Slorah, 118 Me. 203, 106 A. 768, 4 A.L.R. 1256 (1919); State v. Barnes, 54 Wash. 493, 103 P. 792 (1909).

■ The trial court's exercise of its discretion will not be reviewed by an appellate court, unless it clearly appears that the trial court abused its discretion, and a party's rights were thereby prejudiced. State v. Ramsbottom, 89 Idaho 1, 10, 402 P.2d 384 (1965); Barry v. Arrow Transportation Company, 83 Idaho 41, 358 P.2d 1041 (1960); Henderson v. Twin Falls County, 59 Idaho 97, 80 P.2d 801 (1938); appeal dismissed, 305 U.S. 568, 59 S.Ct. 149, 83 L.Ed. 358 (1938); State v. Harris, 119 La. 297, 298, 44 So. 22, 33 (1907); State v. Barnes, supra; 15 Am.Jur. 87.

■ Certainly, the court cannot arbitrarily discharge a jury, nor should it ever be discharged until it appears that there is breakdown in the judicial machinery such as to render further orderly procedure impracticable. State v. Whitman, 93 Utah 557, 74 P.2d 696 (1937). However, the ultimate determination of necessity as will warrant the discharge of a jury without constituting a bar to another trial on the same indictment or information should normally be left to the sound discretion of the presiding judge, acting under his oath of office, having due regard to the rights of both the accused and the state, and subject to review by the appellate court. State v. Slorah, supra; Gori v. United States, supra; United States v. Perez, supra; see Kelly v. People, 121 Colo. 243, 250, 215 P.2d 336 (1950); Brown v. People, 132 Colo. 561, 291 P.2d 680 (1955); State v. Betts, 5 Ariz. App. 256, 425 P.2d 444 (1967); 15 Am.Jur. 76; State v. Farmer, 48 N.J. 145, 224 A.2d 481 (1966).

■ In the case at bar, the trial judge, for reasons of personal prejudice, felt that his continued presence as presiding judge constituted an obstacle to the effectuation of justice. His sworn affidavit supports such a view. There appears nothing to indicate appellants were prejudiced by the original proceedings herein or by the declaration of mistrial. Under the circumstances, we entertain the view that the trial judge acted within his sound and reasonable discretion in declaring the mistrial.

In State v. Connors, 59 Wash.2d 879, 371 P.2d 541 (1962), Chief Justice Finley of the Washington Supreme Court, dissenting from the judgment in a similar case as here, authored an articulate and persuasive opinion which supports the reasoning we here adopt. Therein he stated:

"The crucial issue in this case in my judgment is not whether there was any 'necessity' for the trial court to declare a mistrial in the original proceedings, but whether the trial court abused its discretion by concluding that the situation before it merited an order of mistrial. In other words, the issue, as phrased by the majority, is too narrow. It fails to recognize the possibility of an exercise of reasonable discretion in the matter by the trial court.

\*     \*     \*     \*     \*     \*

"Realistically, the only thing lost to the defendant by virtue of the mistrial order was the chance to gamble with a particular jury. In this connection, the following passages appearing in State v. Stacy, supra, [43 Wash.2d 358, 261 P.2d 400 (1953)] are pertinent:

\*     \*     \*     \*     \*     \*

" 'Due process and fair play regarding criminal defendants do not require a criminal trial to be a game of chance with all of the odds heavily weighted in favor of the defendant. For several generations, leaders of the bench and the bar have sought to place the administration of justice upon a sounder basis as to the rights of both plaintiffs and defendants in civil as well as criminal trials. It seems fairly obvious that the ultimate in a criminal trial should be the ascertainment of the truth; that is whether the accused is innocent and should be set free, or whether the accused is guilty and should be incarcerated for the protection of society. Again, it should not be

a matter of luck or perhaps misadventure of one of the contestants during the course of a trial; nor should the outcome depend substantially upon the skill or luck of the attorney representing one side of the controversy.'

"On the basis of the Brunn case, [State v. Brunn (1945), 22 Wash.2d 120, 154 P.2d 826, 157 A.L.R. 1049] the similar reasoning of the Stacy case [43 Wash.2d 358, 261 P.2d 400 (1953)] and of the U.S. Supreme Court in Gori, [367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901] I would hold that the ordering of a mistrial in the original criminal proceeding was within the discretionary power of the trial court. There has been no showing that the defendant was prejudiced or disadvantaged in any material way; hence, the trial court cannot be said to have abused its discretion." 59 Wash.2d 892–893, 371 P.2d 547–550.

■■■ Appellants assign as error the refusal of the trial court to grant a change in venue of the causes. They contend that the attendant pre-trial publicity was such as to have prejudiced the jury. Sixteen exhibits, including several newspaper articles, and one sensation-creating article from a popular detective magazine were introduced in evidence to demonstrate the magnitude of the publicity surrounding the charged offenses. Removal of an action by change in venue is a matter within the sound discretion of the trial judge. Refusal to grant a change of venue will not result in reversal of a conviction where it appears that the defendant had a fair trial and that no difficulty was experienced in securing a jury. Stokes v. State, 90 Idaho 339, 411 P.2d 392 (1966); State v. McLennan, 40 Idaho 286, 293, 231 P. 718 (1925); State v. Breyer, 40 Idaho 324, 329, 232 P. 560 (1925); State v. Hoagland, 39 Idaho 405, 228 P. 314 (1924); State v. Rooke, 10 Idaho 388, 79 P. 82 (1904); State v. Gilbert, 8 Idaho 346, 69 P. 62 (1902). However, where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case un-

til the threat abates, or transfer it to another county not so permeated with such publicity. Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1607, 16 L.Ed.2d 600 (1966); State v. Tilden, 27 Idaho 262, 147 P. 1056 (1915); Irvin v. Dowd, 366 U.S. 717, 81 S.Ct. 1639, 6 L.Ed.2d 751 (1961); Estes v. State of Texas, 381 U.S. 532, 85 S.Ct. 1628, 14 L.Ed.2d 543 (1965); Palmer v. Utah & N. Ry. Co., 2 Idaho 315, 13 P. 425 (1887).

■■■ While there is evidence to suggest that there was difficulty in selecting an impartial jury, the published articles which were introduced in evidence were so sufficiently remote in time from the second trial in June, 1965, that we cannot say that such publicity resulted in or contributed to failure of a fair and impartial trial. Under the well settled rule, it is not sufficient merely to show that prejudice exists against the accused; it must appear that the prejudice against him is of such magnitude as to prevent him from receiving a fair and impartial trial; and where the evidence before the court is conflicting, its decision will not be reversed upon appeal. State v. Hoagland, supra; State v. Rooke, supra; State v. Gilbert, supra; State v. Reed, 3 Idaho 754, 35 P. 690 (1894); State v. Casey, 34 Nev. 154, 117 P. 5 (1911).

■■■ The rule of discretion in the trial judge being firmly established and it appearing from the State's showing made contra to appellants' motion for change of venue, that it was likely that appellants would be accorded a fair and impartial jury in Cassia County, we are constrained to the view that the order denying the motion for a change of venue must be affirmed. See People v. Goldenson, 76 Cal. 328, 19 P. 161 (1888); State v. Russell, 13 Mont. 164, 32 P. 854 (1893); Goldsberry v. State, 66 Neb. 312, 92 N.W. 906 (1902); Pallis v. State, 123 Ala. 12, 26 So. 339, 82 Am.St.Rep. 106 (1899).

■■■ Appellants assign as error the failure of the trial court to grant a new trial; they assert that the verdict was allegedly contrary to both the law and the evidence. We have consistently held that

where the verdict of conviction is supported by substantial, competent, though conflicting evidence, it will not be disturbed on appeal. State v. Ramsbottom, supra; Findley v. Woodall, 86 Idaho 439, 387 P.2d 594 (1963); State v. Coburn, 82 Idaho 437, 354 P.2d 751 (1960); State v. McConville, 82 Idaho 47, 349 P.2d 114 (1960); State v. Golden, 67 Idaho 497, 186 P.2d 485 (1947). The appellate court's function is not to weigh and consider the contradictions and inconsistencies which appellant finds in the testimony, but rather to determine whether there is substantial evidence in support of the verdict of the jury, taking the view of the evidence most favorable to the sustained party. The court's function is not to determine whether on the record reasonable doubt could or would exist. Audett v. United States, 265 F.2d 837 (9th Cir. 1959), cert. den. 361 U.S. 815, 80 S.Ct. 54, 4 L.Ed. 2d 62, rehearing denied, 361 U.S. 926, 80 S.Ct. 290, 4 L.Ed.2d 241 (1959); State v. Peterson, 87 Idaho 147, 391 P.2d 846 (1964); State v. Booton, 85 Idaho 51, 375 P.2d 536 (1962); State v. Papse, 83 Idaho 358, 362 P.2d 1083 (1961); State v. Anderson, 82 Idaho 293, 352 P.2d 972 (1960); State v. Polson, 81 Idaho 147, 339 P.2d 510 (1959).

Appellants assign error committed by the trial court in refusing their challenge for cause of juror, Manuel Gutierez, who was at the time of trial employed in a janitorial capacity by the law firm of the prosecuting attorney. (Appellants had used their peremptory challenges on voir dire).

The majority of courts have indicated that in the absence of a controlling statute a juror is not disqualified in a criminal case because he has or had professional or business relations with an attorney for one of the parties. Similarly, most courts have held that unless the statute specifically enumerates professional or business relations of a juror to an attorney as a ground for challenge, the relationships are not disqualifying. See Annot. 72 A.L.R.2d 674, 680–81.

The statutory grounds of challenge for implied bias in Idaho are contained in I.C. § 19–2020, which reads in pertinent part:

"A challenge for implied bias may be taken for all or any of the following causes and for no other:

\* \* \*

"2. Standing in the relation of guardian and ward, attorney and client, master and servant, or landlord and tenant, or being a member of the family or boarder or lodger of the defendant, or of the person alleged to be injured by the offense charged or on whose complaint the prosecution was instituted, or in his employment on wages. \* \* \*"

Under the California statute, Cal.Pen.C. § 1074(2), which is substantially identical with I.C. § 19–2020(2), the court has repeatedly held that the proscribed relationship between a prospective juror and an attorney in the case is not a ground for challenge for implied bias. Such relationship must be shown to exist between the juror and accused or the person allegedly injured by the offense charged. In People v. Conte, 17 Cal.App. 771, 122 P. 457 (1912), (denying rehearing of decision in 17 Cal.App. 771, 122 P. 450), the California Supreme Court said:

"In the matter of the challenge of Juror Allen, the proper answer to defendant's claim is that existence of the relation of attorney and client between the district attorney, and a juror is not a ground of challenge under our statute. Subdivision 2 of section 1074, Penal Code, upon which the challenge was based, does not include such a case. The relationship there referred to is one existing between the juror and the defendant himself or 'the person alleged to be injured by the offense charged, or on whose complaint the prosecution was instituted.' \* \* \*"

See also People v. Wilkes, 44 Cal.2d 679, 284 P.2d 481 (1955); People v. King, 30 Cal.App.2d 185, 85 P.2d 928 (1938). Similar reasoning has been employed in other jurisdictions having statutes comparable to I.C. § 19–2020(2). See Sorseleil v. Red Lake Falls Milling Co., 111 Minn. 275, 126 N.W. 903 (1910); State v. Wright, 192 Iowa 239,

182 N.W. 385 (1921); State v. Glover, 21 S.D. 465, 113 N.W. 625 (1907); People v. McQuade, 110 N.Y. 284, 18 N.E. 156, 1 L.R.A. 273 (1888); Annot. 79 A.L.R. 278. See also State v. McGraw, 6 Idaho 635, 59 P. 178 (1899).

▇▇▇ Considering the wording of I.C. § 19–2020(2) and the persuasive interpretations of like or similar statutes in other jurisdictions, we are constrained to the view that the relationship between juror Gutierez and the prosecuting attorney was not one in which can be found the implied bias intended by Idaho's statute. Thus the trial court properly overruled the challenge for cause directed to juror Gutierez.

Appellants assign error of the trial court in refusing to grant a new trial on the ground that, prior to submission of the cases to the jury, a juror allegedly "formed and expressed an opinion concerning a belief in the guilt of defendants [appellants]."

Prior to final submission to the jury, and after closing argument on behalf of the State, a trial juror (later selected foreman of the jury) asked a question and made a declaration as follows:

> "Would it be out of order to say that if defendants are guilty, they should plead guilty and throw themselves on the mercy of the court? I say if the defendants are guilty, they should throw themselves on the mercy of the court."

to which the court remarked: "That is a matter between defendants and their counsel."

Appellants contend that the declaration constituted the juror's expressed opinion adverse to appellants and that the court then and there erred in failing to declare a mistrial. Appellants argue that the incident prejudicially affected appellants' rights, thus necessitating a mistrial.

While appellants did not request a mistrial at the time the incident occurred nor during the course of the trial, State v. Puckett, 88 Idaho 546, 555, 401 P.2d 784, 789 (1965), nevertheless they assert in effect that the trial court of its own motion should have declared a mistrial; that in failing to do so, the court abused its discretion.

▇▇▇ Statements and expressions of opinion concerning the case or evidence offered therein made by a juror outside the jury room, during the course of the trial and before the submission of the case, are normally grounds for a new trial if they indicate an opinion unfavorable to the losing party or ill-will toward him. Blakeney v. Alabama Power Co., 222 Ala. 394, 399, 133 So. 16, 20 (1931); Martin v. Oregon Stages, Inc., 129 Or. 435, 277 P. 291 (1929); Hansen v. Muller, 65 S.D. 546, 276 N.W. 150 (1937); York v. Wyman, 115 Me. 353, 98 A. 1024, L.R.A.1917B, 246 (1916); Rowe v. Shenandoah Pulp Co., 42 W.Va. 551, 26 S.E. 320, 57 Am.St.Rep. 870 (1896); 66 C. J.S. New Trial § 52, p. 167. A casual remark of a juror however, though such may indicate bias at that time, is not necessarily a ground for a new trial. Dischner v. Loup River Public Power Dist., 147 Neb. 949, 25 N.W.2d 813 (1947).

▇▇▇ A mere expression of opinion by a juror as to the merits of the case, based only on the testimony that has been adduced and not indicating any improper bias or prejudice against the unsuccessful party, or an expression of opinion that the case ought to be settled out of court, does not evidence bias or prejudice against either party. Pine v. Callahan, 8 Idaho 684, 71 P. 473 (1902); State v. Wenatchee Valley Holding Co., 169 Wash. 535, 14 P.2d 51 (1932); McGuire v. Amyx, 317 Mo. 1061, 297 S.W. 968, 54 A.L.R. 544 (1927); State v. Robidou, 20 N.D. 518, 128 N.W. 1124 (1910); State v. Aker, 54 Wash. 342, 103 P. 420 (1909); Pettibone v. Phelps, 13 Conn. 445 (1840); Russel v. Pere Marquette Ry. Co., 245 Mich. 624, 223 N.W. 230 (1929), cert. den. 279 U.S. 864, 49 S.Ct. 480, 73 L. Ed. 1003; see also Berry v. DeWitt, C.C. N.Y., 27 F. 723 (1886); Clarke v. Town Council of South Kingstown, 18 R.I. 283, 27 A. 336 (1893). The statement of the trial juror herein furnishes but slight indication, if any, of bias or prejudice.

Appellants contend that the trial court erred in limiting cross-examination of two defense witnesses, i. e., Higens and Stoker, concerning facts stated in their direct examination or connected therewith. I.C. § 9–1205.[1] Appellants refer specifically to the court's limitation of the defense's cross-examination (1) relating to conversation between defendants and officer Higens while returning from Pennsylvania to Idaho, and (2) upon State's witness Stoker, whom the court required counsel to make a defense witness. In both instances, appellants claim, testimony was omitted which would have been relevant in tending to demonstrate the innocence, or willingness to prove innocence, of appellants.

Officer Higens and Cassia County Sheriff Warrell returned appellants from the State of Pennsylvania to Burley after they had waived extradition. At the trial Higens related certain conversations with appellants during that trip. Appellants admitted that they were in Burley August 14, 1964, in Mueller's 1953 Buick automobile, which they described; that on August 14th they worked for a farmer in the Burley area; that when they quit work that day "they came into town (Burley) and ate supper and cashed a check * * * and then * * * drove from Burley and parked someplace and slept"; that they were going to Washington after leaving Burley. Mr. Higens then testified, "I did ask Mr. Mueller in regards to if he had ever dyed his hair and he replied no"; that Cypher volunteered the information that Mueller's hair turned lighter if he didn't use hair oil; that there was more conversation but nothing "in regards to this incident that I can recall."

On cross-examination, Higens stated that on the way from Pennsylvania to Burley, he did not recall "what Mr. Mueller said * * * about having a hair dye test." He recalled someone said Mueller's hair was lighter when it was not oiled. Again, Higens stated there was more conversation, "but not about this particular incident."

Defense counsel then asked Higens the question on cross-examination, "Will you state, Mr. Higens, whether or not these men asked you to give them any type of scientific test that was available."

The jury was then excused at the State's request. The State then sought a ruling as to whether "at this juncture" any testimony was admissible "with respect to the willingness or unwillingness of the subjects to submit to a lie detector test or sodium pentothal test."

Defense counsel then offered to prove that in the conversations appellants not only made the statements to which Higens testified on direct examination, but made additional statements, including appellants' request of Higens or Mr. Warrell, that samples of Mueller's hair be tested in order to determine whether his hair had been dyed; also, that they asked Mr. Higens or Mr. Warrell to give them (appellants) any type of scientific examination, including lie detector tests, to aid in establishing their innocence of this charge. The defense attorney then stated, " * * * it is the position of the defendants that it reflects the state of mind that these defendants have to their involvement in this crime at the time of their arrest and is probative and is admissible."

The court remarked that "None of this came out of direct examination. These are new statements entirely." Appellants' counsel contended however, that since the subject matter arose in the same conversations to which Higens testified, additional testimony in regard thereto was admissible; also, that appellants should be allowed to go into matters opened on direct examination which the State had opened up, and that the evidence adduced should not be limited to testimony which is "self-serving" for the State.

1. I.C. § 9–1205 reads:
   "The opposite party may cross-examine the witness as to any facts stated in his direct examination or connected therewith, and in so doing may put leading questions; but if he examine him as to other matters such examination is to be subject to the same rules as a direct examination."

The trial court denied the offer of proof.

Defense counsel asked if the ruling extended to the hair dye tests. The court replied that he would rule on that matter "when it comes before me, if it does, but at the present time I am denying the offer of proof and sustaining his objection."

The witness Stoker testified he had employed appellants the morning of August 14, 1964, after they had been sent to his farm by the Employment Security Agency, and that they worked on his farm that day. They stated they were from the State of Pennsylvania. He described the automobile which they used and identified a photograph of the car. He described appellants and identified photographs of them. He stated that appellants left the farm the evening of August 14th, intending to return to work the next day.

The cross-examination generally reviewed Stoker's testimony elicited on direct examination. Counsel then asked Stoker if he had occasion to see appellants after they were returned to Idaho, to which the State objected on the ground that such was not brought out in direct examination. The court thereupon ruled in effect that appellants should make Stoker a witness for the defense, which appellants' counsel did.

It is a fundamental rule of law, and one which has been recognized repeatedly, that the scope of cross-examination is largely within the discretion of the trial judge, and unless the discretion is abused in allowing the cross-examination to go beyond the matters testified to on direct examination or connected therewith such will not be held to be error. State v. Hargraves, 62 Idaho 8, 107 P.2d 854 (1940); State v. McClurg, 50 Idaho 762, 788, 300 P. 898, 908 (1931); Barton v. Dyer, 38 Idaho 1, 220 P. 488 (1923). See also State v. Jester, 46 Idaho 561, 270 P. 417 (1928); State v. Larsen, 42 Idaho 517, 246 P. 313 (1926); State v. Mox Mox, 28 Idaho 176, 152 P. 802 (1915); Just v. Idaho Canal and Improvement Co., Ltd., 16 Idaho 639, 102 P. 381, 133 Am.St.Rep. 140 (1909); State v. Reilly, 25 N.D. 339, 141 N.W. 720 (1913); Rand v. Inhabitants of Newton, 6 Allen (88 Mass.) 38 (1863); I.C. § 9–1205.

We agree that the handling of cross-examination should be primarily within the province of the trial judge, who is best situated to determine the relevance and scope of evidence to be adduced. In the present instance we cannot say that the court committed error in so limiting counsel for appellants in his cross-examination.

Appellants assert error committed by the trial court in allowing to be admitted in evidence on respondent's behalf, photographs of appellant Mueller's automobile; also the testimony of Oregon Police Officer Thomason concerning his apprehension and feelings upon encountering appellants the day following the crime.

Any evidence which logically tends to prove or disprove a fact in issue is relevant and therefore admissible, provided it is not too remote or speculative, or of such slight probative value as to justify the court in excluding it on grounds of immateriality. State v. Farris, 48 Idaho 439, 282 P. 489 (1929). See also State v. Linebarger, 71 Idaho 255, 232 P.2d 669 (1951); State v. Kleier, 69 Idaho 278, 206 P.2d 513 (1949); Williams v. Neddo, 66 Idaho 551, 163 P.2d 306 (1945); McClain v. Lewiston Interstate Ass'n, 17 Idaho 63, 104 P. 1015 (1909). " * * * while there is no finality to the discretion of the trial court on the point of evidence, the appellate court should hesitate to superimpose its judgment to the contrary as to the probative value of the evidence except as a matter of law, based upon established precedents." State v. Alvord, 47 Idaho 162, 174, 272 P. 1010, 1013 (1928). See 1 Wigmore on Evidence, 2d ed., § 238, p. 494.

Appellants question the admissibility of the referred to evidence on grounds of its lack of relevance and materiality. Although such evidence may not have been essential to the court's ultimate determination, we are constrained to the view that whatever question exists as to its relevancy,

the trial court did not commit prejudicial error in admitting it.

Appellants contend that the trial court erred in refusing to admit evidence of the characteristics or propensities of defendants as elicited in a drug-induced examination of them, even though the examining physician, a psychiatrist, employed sodium pentothal in his examination. Appellants argue that the intense public sentiment against them in the community required definitive, scientific proof if they were to establish their defense.

The admission of evidence obtained by means of a sodium pentothal examination is a question of first impression in this State. Despite a few well-publicized decisions to the contrary, the weight of authority in our American jurisdictions still regards truth serum tests as inadmissible, inasmuch as they have not as yet attained scientific acceptance as reliable and accurate means of ascertaining truth or deception. State v. White, 60 Wash.2d 551, 374 P.2d 942 (1962); see Knight v. State, 97 So.2d 115 (Fla.1957); People v. Mc-Nichol, 100 Cal.App.2d 554, 224 P.2d 21 (1950); People v. Ford, 304 N.Y. 679, 107 N.E.2d 595 (1952); Lindsey v. United States, 237 F.2d 893, 16 Alaska 268 (9th Cir. 1956); State v. Thomas, 79 Ariz. 158, 285 P.2d 612 (1955), cert. den. 350 U.S. 950, 76 S.Ct. 326, 100 L.Ed. 828; Henderson v. State, 94 Okl.Cr. 45, 230 P.2d 495, 23 A.L.R. 2d 1292 (1951), cert. den. 342 U.S. 898, 72 S.Ct. 234, 96 L.Ed. 673; State v. Levitt, 36 N.J. 266, 176 A.2d 465, 91 A.L.R.2d 1112 (1961). See also Annot. 23 A.L.R.2d 1310, sec. 3. Compare People v. Jones, 42 Cal. 2d 219, 225, 266 P.2d 38 (1954); People v. Cartier, 51 Cal.2d 590, 335 P.2d 114 (1959).

■ Without considering specifically the issue of admissibility of a psychiatrist's testimony regarding the results of a "truth serum" examination, we prefer to apply the general rule that the trial court, in passing upon the qualification of a witness offered as an expert, has wide discretion in determining the admissibility of evidence so offered. An appellate court should not disturb the ruling of the trial court in the absence of a manifest abuse of such discretion. See People v. Carter, 48 Cal.2d 737, 752, 312 P.2d 665, 674 (1957); State v. White, supra; People v. Jones, supra.

■ Appellants assert error committed by the trial court in refusing to admit evidence of the commission of crimes committed at times after appellants were apprehended, assertedly similar in circumstances to the crime allegedly committed by appellants. Appellants refer specifically to two motel robberies occurring in September, 1964, and February, 1965, in Twin Falls, Idaho, and Ontario, Oregon, respectively; in each such instance a woman assertedly was involved who had been left in charge of the motel.

We stated in State v. Miller, 65 Idaho 756, 154 P.2d 147 (1944), that "vague surmises or conjectures that someone else might have committed the offense, there being nothing in the evidence to sustain the same, does not warrant a new trial or a reversal." State v. Caviness, 40 Idaho 500, 508, 235 P. 890 (1925). See State v. Moon, 20 Idaho 202, 117 P. 757 (1911); State v. Fletcher, 24 Or. 295, 33 P. 575 (1893); Greenfield v. People, 85 N.Y. 75, 76, 39 Am.Rep. 636 (1881). The disparities in time and place between the referred to crimes, and the lack of evidence to sustain a showing of similarities between the crimes, constrain us to concur with the trial court's ruling.

Appellants contend finally that the trial court committed reversible error in rejecting evidence of gunshot experiments designed to show powder burns.

■ Experiments based upon reasonably similar circumstances are admissible to show the existence or nonexistence of a fact, and the circumstances do not need to be exactly the same as those surrounding the event. State v. Copenbarger, 52 Idaho 441, 16 P.2d 383 (1932). However, similarity of circumstances and conditions must be left to the sound discretion of the trial court, and determined by him, subject to review only for abuse. Jones v. Talbot, 87

Idaho 498, 394 P.2d 316 (1964); Stuchbery v. Harper, 87 Idaho 12, 390 P.2d 303 (1964); State v. Copenbarger, supra; Kohlhagen v. Cardwell, 93 Or. 610, 184 P. 261, 8 A.L.R. 11 (1919).

Judgments affirmed.

TAYLOR, C. J., and McQUADE, Mc-FADDEN and SPEAR, JJ., concur.