**Phillip C. EATON, Sr., Defendant, Appellant,**

v.

**STATE of Delaware, Plaintiff, Appellee.**

Supreme Court of Delaware.

Submitted Sept. 13, 1978.

Decided Oct. 24, 1978.

Richard E. Fairbanks, Jr., and David M. Lukoff, Asst. Public Defenders, Wilmington, for defendant-appellant.

Richard J. McMahon, Deputy Atty. Gen., Wilmington, for plaintiff-appellee.

Before HERRMANN, C. J., DUFFY and McNEILLY, JJ.

DUFFY, Justice:

Defendant was convicted by a Superior Court jury of first-degree murder, 11 *Del.C.* § 636, and a related weapon offense, 11 *Del.C.* § 1447. He appeals, assigning three reversible errors by the Trial Judge in his conduct of the proceedings.[1] We affirm.

### I

The facts are these:

Andrew Greene was shot and killed by defendant while visiting his fiance, the former wife of defendant and the mother of the Eaton children. The shooting occurred in the presence of the children and their mother. Defendant's state of mind at the time of the shooting was the principal issue at trial, and both the State and defendant introduced expert medical testimony to support their respective contentions. Briefly, defendant relies on extreme emotional distress, see 11 *Del.C.* § 641, as a defense to the murder charge. We turn now to the assignments of error.

### II

First, defendant argues that the Trial Judge mistakenly refused him permission to play for the jury a tape recording of his psychiatric interview, which took place while he was under the influence of a drug (sodium amytal) administered for purpose of the examination. Although the expert medical witness (a psychiatrist) who conducted the interview testified to the contents of the tape, defendant wanted the jury to hear it. His reason was that the doctor had testified differently at the first

---

1. This was defendant's second trial on the same charge. His first conviction was reversed by this Court because of an error in the instruction to the jury on the burden of proving extreme emotional distress. 363 *A.2d* 440 (1976).

trial, but changed his opinion based on the drug-aided examination. In effect, defendant sought to support the witness by using the tape to help explain why the doctor had formed a different opinion. The Court excluded the actual tape because of possible prejudice and confusion, not because it was irrelevant.[2]

The test on appeal, as defendant concedes, is whether the Trial Judge abused his discretion. Defendant asserts that he did, particularly because the Judge did not listen to the tape before ruling.

It seems clear that the Court was adequately informed of the nature of the proffered evidence and the gist of its contents. Indeed, the foundation which defendant's attorney made before the Court (and jury) for admission of the tape included the following testimony by the psychiatrist about the tape:

"Q  So the tone or quality of his voice, was that of some diagnostic value to you?

A  Everything about his manner, his voice in particular, which was very revealing of his feelings, how he phrased things, how—the intimations of his words were also part and parcel of evaluating the meaning in what he was telling me and its relevance, as well.

Q  Did you terminate the interview at some point?

A  Yes, sir.

Q  Why?

A  I terminated it for medical reasons.

Q  What medical reasons were those?

A  Mr. Eaton became so disturbed and agitated that I began—and at one point became so grossly disturbed, particularly in terms of what he was then insisting on that was not true, clearly not true, in the state of confusion that he entered into, that I felt that there might be a risk to his mental state and felt, regardless of the legal proceeding, pursuit of this procedure was not justified.

Q  You said he was emotional.  How did he express his emotions during the interview?

A  Anything from quiet sobs to crying very hard, to overt expressions of rage and anger; really a gammit [sic] of extreme feeling."

Defendant does not identify what more understanding about the offer the Trial Judge would have had after listening to the entire tape.  And, given the psychiatrist's unrestricted testimony about the tape and the significance of an aural exposure to it, we cannot say that the Court abused its discretion by failing to hear the tape before ruling on its admissibility.

Generally speaking, an expert witness is expected to state the entire basis for his opinion, 31 *Am.Jur.*2d Expert and Opinion Evidence § 36 (1967), and a necessary corollary of the rule is that he is entitled to show such basis.  But neither side of the evidence territory is unlimited.  As the Supreme Court of Oregon observed in a comparable case, *State v. Harris,* Ore.Supr., 241 Or. 224, 241, 405 P.2d 492, 500 (1965):

2.  The ruling was made at trial when the Court said, in part, as follows:

".  .  .  I am not satisfied that the tape should be played.  I think it would be unnecessary in order to make a decision legally whether it would be played before the jury.

As I have examined it, it is clearly along the lines the Doctor suggested and you suggest, and that is it would show a very emotional statement of, quote, facts, unquote, by the Defendant which may well have been important to the Doctor's psychiatric evaluation of the incident and the Defendant.  But what the defense is proposing is to play this to the jury partially, I suppose, for the factual content thereof; but, more importantly, as

it's been put, to afford the jury an opportunity to get the emotional content of it as a basis for judging the Doctor's conclusions.

In doing that, what we are actually suggesting is that the jury should be presented with very intricate and complex material and asked to evaluate, you might say, a psychiatrist, almost.  In that sense I think it is obviously prejudicial.  It is not a present presentation of seriously probative evidence.  I do not preclude the Doctor from testifying to what was said, what the basis of his opinions are, but I don't think it is proper that a jury should be given this material and asked to evaluate whether the expert's conclusions are proper, based upon that material."

"An implied prerequisite to the application of the rule that an expert witness must recount the entire basis for his opinion is that the value of such information not be outweighed by the danger that the jury will be confused on other principal issues of the case . . ."

See also *State v. White,* Wash.Supr., 60 Wash.2d 551, 374 P.2d 942 (1962), *cert. denied,* 375 U.S. 883, 84 S.Ct. 154, 11 L.Ed.2d 113. Compare *State v. Cypher,* Idaho Supr., 92 Idaho 159, 438 P.2d 904 (1968).

 Here, defendant's witness was permitted to freely testify from a transcript (which is conceded to be accurate) of the tape and he described in some detail defendant's demeanor during the interview. Given the unrestricted testimony which was admitted into evidence, covering all circumstances of the interview and why the doctor testified differently at the second trial, we conclude that the Trial Judge did not abuse his discretion in refusing to permit defendant to play the tape for the jury.

### III

Next, defendant argues that the Trial Court improperly instructed the jury on extreme emotional distress. He does not contend that the burden of proof thereof was improperly placed on him. In light of the fact that the trial below took place before our decision in *State v. Moyer,* Del.Supr., 387 A.2d 194 (1978), the Trial Judge quite correctly instructed (in this case) that:

(1) to convict for first-degree murder, the State was required to prove an intentional killing, plus the absence of extreme emotional distress; and

(2) to convict for second-degree murder, the State was required to prove a reckless killing under circumstances manifesting a cruel, wicked, and depraved indifference to human life, plus the absence of extreme emotional distress.

Defendant apparently does not take issue with this part of the charge. Therefore, he could only have been found guilty of first-degree murder *after* the State had met its burden of proving the absence of extreme emotional distress.

Finally, defendant argues that the Trial Judge gave confusing instructions in regard to the offense of manslaughter. Defendant seems to say that the instructions would permit a conviction for manslaughter if the State proved the existence of extreme emotional distress and also if the State failed to prove the absence of extreme emotional distress. Reading the instructions in their entirety, as we do, *Jenkins v. State,* Del.Supr., 305 A.2d 610, 617 (1973), we are not persuaded that the Trial Judge misled the jury on this point.[3]

No reversible error of law appears in the charge.

AFFIRMED.

3. The Court charged in part as follows:
"When some credible evidence supporting the presence of extreme emotional disturbance has been presented, the State must then prove, beyond a reasonable doubt, either that the defendant intentionally caused the death of the victim plus the absence of extreme emotional disturbance before there can be a guilty verdict of Murder in the First Degree or that the defendant recklessly caused the death of the victim, under circumstances manifesting a cruel, wicked and depraved indifference to human life, plus the absence of extreme emotional disturbance before there can be a guilty verdict of Murder in the Second Degree. If, on the other hand, you are convinced beyond a reasonable doubt

there was an intentional killing or reckless killing, under circumstances manifesting a cruel, wicked and depraved indifference to human life, and it was done under the influence of extreme emotional disturbance, then your verdict should be guilty of Manslaughter. Naturally, if the State has not proven any essential element of either Murder in the First Degree or Murder in the Second Degree or Manslaughter, your verdict should be not guilty."
Any error in this instruction benefited defendant because the jury was told that if the State had failed to prove any essential element of murder in the first degree, murder in the second degree or manslaughter beyond a reasonable doubt, the verdict should be not guilty.